### WATTS v. STARR et al.

Though declarations made out of court by a witness may be used to impeach the witness, they cannot be treated as substantive evidence to establish the facts which they affirm; and a charge of the court so treating them, whether expressly or by necessary implication, is erroneous. Such a charge is vicious as based on an assumed state of facts, where this class of declarations is the only evidence to which it could apply.

December 23, 1890.

Ejectment. Evidence. Witness. Impeachment. Charge of court. Before Judge MILNER. Gordon superior court. February term, 1890.

Ejectment was brought upon the demise of James A. Watts as sole heir of John C. Watts. The defendant obtained a verdict, and the plaintiff moved for a new trial. The motion was overruled, and exceptions were taken. For this report it is sufficient to state three grounds of the motion, to be taken in connection with the statements in the decision:

The plaintiff based his right to recover the land sued

for on the facts that James Watts executed and delivered to John C. Watts, in January, 1862, a deed conveying the land to him, and that John C. Watts immediately went into possession and occupancy of the land with his family, consisting of his wife and plaintiff, his only child, an infant, claiming the same as his own, and died while in said possession and occupancy, leaving his wife and child as his only heirs at law, who continued in the use, occupancy and possession of the land until the death of the wife not long thereafter, whereby the plaintiff became the sole heir and owner of the land, and by his friends, agents and tenants, continued in such actual possession and occupancy until the defendant obtained possession under a sheriff's sale in July, 1885. The court admitted, over objection upon the ground of irrelevancy, parol evidence of a deed from Chandler to Deliza Watts, wife of James Watts, and from her to C. P. and W. R. Kiker, and the cancellation of the trade and turning the papers back to her, to impeach the witnesses James Watts and Deliza Watts, who had been examined by plaintiff, and then so instructed the jury as to allow them to consider said evidence and the possession of the parties thereunder, and whether Deliza Watts purchased the land with her separate funds derived from her father's estate, for the purpose of sustaining the defence.

The court charged: "You will look to all the evidence which the court has admitted as competent evidence for your consideration in determining the issue as to whether James Watts, in 1862, made and delivered his deed to his son, John C. Watts, conveying to him the land in dispute, under which John C. Watts went into possession thereof. There is no such deed in evidence before you in writing. It is alleged that the deed was destroyed. You will, therefore, look into the evidence which the court has admitted as secondary evi-

dence tending to show that such a deed ever existed, that it was properly executed, conveying the land in dispute to John C. Watts, and delivered to him. Does the evidence show that such a deed was executed by James Watts in the presence of witnesses, and does the evidence show that the deed was delivered by James Watts to John C. Watts?" The court had admitted in evidence a deed made by James Watts, as agent for Deliza Watts, to C. P. and W. R. Kiker, for the purpose only of impeaching them; and the error alleged in this charge is, that it submitted to the jury, without qualification or distinction, all the evidence that had been admitted, of which the deed above referred to was a part, to be considered by them in determining the issue as to whether James Watts, in January, 1862, made and delivered his deed to John C. Watts for the land sued for, and did not restrict the jury to the consideration of said evidence only as it might affect the credit or weight of the evidence of James and Deliza Watts, and not to consider it as showing ownership or title in Deliza Watts, under whom the defendant claimed by purchase at sheriff's sale, or any right in them to dispose of the land as the property of said Deliza Watts.

The court charged: "If you find from the evidence that the deed was made by James Watts conveying the land to John C. Watts, and that John C. Watts went into possession thereof, and afterwards that trade was cancelled and the deed given back to James Watts and that he burnt it, the destroying of the deed would not legally convey the land back to James Watts; but if you find that James Watts, at the time the deed was given back to him, returned the purchase money notes which John C. Watts had given him for the land, should you find that such notes were given, then the delivery of the note and destruction of the deed would in equity leave the title in James Watts. And if John C. Watts

died after this transaction, he did not die seized and possessed of the land ; and the plaintiff would not be entitled to recover." Error, because unauthorized by evidence.

W. R. RANKIN, J. A. JERVIS and DABNEY & FOUCHÉ, for plaintiff.

O. N. STARR and R. J. & J. McCAMY, for defendants.

BLECKLEY, Chief Justice.

The plaintiff is clearly entitled to a new trial, because the court charged the jury on an assumed state of facts. There was no evidence of any sale of the land to John C. Watts, the plaintiff's father, or that any notes for the price were given, or that any contract of sale was made or cancelled or that notes for the price were returned and the deed given back. What any person other than the plaintiff or his father may have said on these subjects, was not evidence to affect him, nor was it evidence at all except as bearing on the credibility of witnesses. The court tacitly treated the mere declarations of a witness as evidence by which as declarations or admissions the plaintiff's title could be directly affected. This was a grave error. All the testimony applicable to the real nature of the conveyance by James Watts to John C. Watts tended to show that the deed made was a deed of gift, not a conveyance founded on a valuable consideration. There was nothing whatever to show that there was any purchase or purchase price, or that any notes were given or returned, nor was there any evidence tending to show that the deed was given back to James Watts. On the contrary, he found it among the papers of John C. Watts after the death of the latter, and of his own will took it and destroyed it. If this deed of gift was made and delivered by James Watts with the consent and approbation of his wife, these two being the father and mother of John C.

Watts, and if John C. accepted the gift and entered into possession under the deed and died while in possession, he was. the owner of the land as against both his father and mother, and neither of them could afterwards divest his title by abstracting the deed from his papers and destroying it.   John C. Watts having died intestate, the title would descend to his wife and child as his heirs at law, and the plaintiff being that child and his mother having died intestate, leaving him surviving as her heir at law, he would have the whole title.   If this is the truth of the case, he is entitled to recover *prima facie;* and to defeat him, some defence to the action must be established that affects him, that is, that shows that he has lost the title with which he was once clothed.

The court erred in not granting a new trial.

*Judgment reversed.*