GEORGIA RAILROAD AND BANKING COMPANY *et al. v.*
ANDREWS.

1. In a suit against a railroad company for damages resulting from the negligent killing of live-stock by the agents of the company, engaged in the operation of its locomotives, cars, and other machinery, testimony of the engineer was offered by the defendant to the effect that as soon as the animals were seen he applied the brakes and reversed the engine. For the purpose of contradiction, the plaintiff testified that on the morning after the injury the engineer admitted that he " did not have time to apply anything at all." Such testimony of the plaintiff was contradictory of the testimony of the engineer upon a material point; and if the jury believed the engineer successfully impeached upon that point, it was in their province to disregard his entire testimony.

2. In such a case the defendant does not support the burden of proof, which arises by force of the statute upon proof of the injury, by the testimony of the fireman alone, it appearing that he did not see the animals at all and could not say of his own knowledge at what time the engineer actually saw them, and whether or not he applied the brakes and reversed his engine with due diligence after seeing them.

Submitted February 22,—Decided March 23, 1906.

Action for damages. Before Judge Lewis. Baldwin superior court. April 3, 1905.

*Joseph B. & Bryan Cumming* and *Allen & Pottle,* for plaintiff in error. *Hines & Vinson,* contra.

ATKINSON, J. This was an action on the case for damages alleged to have been sustained by reason of the killing of a certain mare and a colt, the property of the plaintiff, by the negligence and carelessness of the servants of the defendant (a railroad company) in the running of its locomotives, cars, and other machinery. The plaintiff proved the killing, value, and ownership of the animals mentioned, and rested upon the statutory presumption of negligence. The defendant assumed the burden and attempted to prove that its agents and servants had "exercised all ordinary and reasonable care and diligence," and therefore that the injury did not result from the negligence of the defendant. The engineer in charge of the train testified, among other things: "I couldn't stop. It was night, about one o'clock. The train was a through freight, running about 25 miles an hour. I had air-brakes on the engine and throughout the train. I don't know of any better method of stopping a train quickly than air-brakes. We had a headlight that night, and it was burning at the time I hit the stock. At that time I was on my box, in position on the engine where I belonged, on

the right side of the engine looking ahead. When I first saw the animals I was about 75 yards of them. When I first saw them I applied my brakes and reversed my engine. There was nothing else I could have done to have stopped that train. The mare and colt were together at the time, standing on the track. Neither of them ran at the approach of the train. . . The air-brake appliances, which were throughout the train and on the engine that night, were working all right, and when I applied them at the time they worked all right and slowed up the train, but it was impossible to stop within the distance. It was a straight track. It was not possible to see the stock earlier than I did. There was nothing to keep me from seeing it except the darkness. . . With the headlight burning, I couldn't see the stock at a distance greater than about 75 yards. . . It was an oil light with a regular silver reflector. I can see about 75 yards with such a light. I never stopped at all after I struck the stock; I went on. The next morning I came down and saw Mr. Andrews. I believe he waved me down; he was there, and I stopped. Of course we talked of it. I didn't make any statement that I made no effort to stop the train. I did all that was possible to avoid striking the stock, and I never made any statement that I did not do it." The fireman testified: "On the night of this accident I was on the engine, and was fixing the fire at the time the stock was hit. I don't remember about the makeup of the train, but it had air-brakes on the engine and train. On that particular occasion the engineer put on his air-brakes and reversed his engine. It slowed the train up some, but it didn't stop before we hit the stock. We had an oil headlight that night, which was in good condition. I suppose we could see something the size of a horse or colt by means of the headlight about 75 yards. After the engineer saw the stock there was nothing that he could have done that he did not do, looking to the stopping of the train. I didn't see the stock at all myself. We were running about 25 miles an hour. . . The train didn't stop after striking the stock. The first thing that attracted my attention was the engineer putting on the brakes and reversing his engine. An oil headlight is the only kind that is used on the Georgia Railroad. I don't know anything about the electric light. They don't use them on the Georgia Railroad." In rebuttal the plaintiff testified: "The train stopped the next morning, and Mr. Anderson, the engineer, got off near the

scene of the accident. I waved the train down and had a conversation with Mr. Anderson, and he told me 'he was right on them before he saw them, and didn't have time to apply anything at all.' The words that Mr. Anderson said to me were that he was right on the stock before he saw them and didn't have time to apply anything." The engineer, being recalled, testified in reference to the statement of Mr. Andrews: "As to the statement that I never attempted to stop, I did everything to stop. I saw them as soon as they could be seen, and I did everything that a man could have done to avoid the accident. I didn't make any statement to Mr. Andrews that I didn't have time to apply anything. . . I never had any such conversation as Mr. Andrews reports, that I didn't try to stop and didn't attempt to stop."

From the evidence quoted it will be seen that the engineer, who alone saw the stock, says: "When I first saw them I applied my brakes and reversed my engine." The effort to stop the engine is the gist of the defense upon which the defendant relies to defeat the plaintiff's recovery. Upon that point the plaintiff as a witness in his own behalf swears to a statement which the engineer made, to the effect that he "didn't have time to apply anything." In reply to this testimony the engineer again testified: "I never had any such conversation as Mr. Andrews reports, that I didn't try to stop and didn't attempt to stop." Thus an issue was presented between the witnesses. Counsel for defendant insists that the statement of the plaintiff was not a contradiction of the engineer's testimony, and if it amounted to a contradiction, the same was not entitled to consideration, except for purposes of impeachment, citing, upon the latter point, *Watts* v. *Starr,* 86 *Ga.* 392, *Central R. Co.* v. *Maltsby,* 90 *Ga.* 630, *Green* v. *State,* 95 *Ga.* 463, and *Jones* v. *Harrell,* 110 *Ga.* 373. The testimony of the plaintiff is directly contradictory to the testimony of the engineer to the effect that he did apply the brakes. As to the effect of the evidence being entitled to no consideration, except for impeachment, the point is well taken; but admitting that it could have no other effect, it was in the province of the jury to say whether or not the witness was successfully impeached. The matter testified about was material to the issue on trial; and if the jury found that the witness was successfully impeached, they could then disregard his entire testimony. Code, §5295; *Mitchell* v. *State,* 110 *Ga.* 272 (2). The ver-

dict being against the defendant, it will be presumed that such was the reasoning and finding of the jury. But counsel insist that even if the engineer's testimony is disregarded, there was still left the testimony of the fireman (whom no effort was made to impeach), which completely establishes the defense to the action. We do not so construe that testimony. The fireman was at work and did not see the animals at all. It was therefore impossible for him to say at what time the animals were seen by the engineer, or that he had applied the brakes and reversed the engine as soon as they were seen. It is true that the fireman says: "After the engineer saw the stock, there was nothing he could have done that he did not do, looking to the stopping of the train." This is a mere conclusion upon the part of the witness, and ought not to have influenced the finding of the jury. For the reasons already given, the testimony of the fireman falls short of sustaining the defense made by the defendant. Upon the whole the verdict is supported by the evidence, and the court did not commit error in refusing a new trial.　　　*Judgment affirmed.　All the Justices concur.*