844.   PARKER *v,* THE STATE.

1. In a case of assault with intent to rape, the jury would be authorized to convict on the uncorroborated testimony of the injured female. In the case sub judice there were "concurrent circumstances" and facts of corroboration, and the verdict was fully warranted by the evidence.

2. A judgment refusing a continuance will not be reversed, unless it is manifest that such judgment was an abuse of sound legal discretion. No. abuse of such discretion appears in the present case.

3. New trials on the ground of newly discovered evidence are not favored by the courts, and should not be granted unless it appears that the testimony alleged to be newly discovered could not have been secured at the trial by the exercise of reasonable diligence, and that its introduction would probably change the result on a second trial. The motion on this ground in the present case lacks the two essentials indicated.

4, 5. There is no merit in the exceptions to the charge of the court on the subject of reasonable doubt and on the impeachment of witnesses.

Indictment for assault with intent to rape, from Walton superior court. October 22, 1907.

Argued December 10,—Decided December 20, 1907.

A. C. Stone, A. E. Hawkins, for plaintiff in error.

S. J. Tribble, solicitor-general, contra.

HILL, C. J. Offie Parker, a white boy sixteen years old, was convicted of the crime of assault with intent to commit rape on the person of a little white girl named May Johnson, ten years of age. He made a motion for a new trial, based on the general grounds and on several special assignments of error. This being denied, he brings the case to this court.

1. As to the three general grounds of the motion it may be stated that the verdict of the jury was amply supported by the evidence. The little girl testified that while she was on her way to school, between seven and eight o'clock in the morning, the defendant suddenly jumped out of the bushes, grabbed and dragged her to "a little spot of pines," where he forcibly and against her will made the felonious assault. Her testimony fully establishes the commission of the offense, and she is corroborated by facts and circumstances testified to by other witnesses. Some of these circumstances and facts of corroboration are as follows: First, she was seen by several witnesses on the road to school near the place where she said the offense took place, and about the time she said it took place. During recess, a few hours after the commission of the offense, she made complaint to a schoolmate, exhibiting to this schoolmate her drawers, which were torn and ripped, and stating to her that they were so torn and ripped by her assailant at the time of the assault. The schoolmate testified that the complaint was so made, and also testified as to the said condition of the drawers. She further made complaint the same afternoon, so she states, to her mother and stepfather, when she went home from school; and the next morning, in company with her stepfather

and several of the neighbors, she went to the place where she said the crime had been committed and pointed out the place to them; and these witnesses testified that there were physical marks on the ground, indicating a recent scuffle or struggle. Three witnesses,— two boys on their way to school, and a white woman,—testified that they saw the defendant near the place, and about the time, of the commission of the crime, as stated by the girl in her evidence. These facts and circumstances of corroboration were testified to by witnesses who were not related to the girl nor connected with the prosecution in any way. The trial judge instructed the jury that they could not convict on the uncorroborated testimony of the party assaulted; following the decision of the Supreme Court in the case of *Davis* v. *State,* 120 *Ga.* 435 (48 S. E. 180). That was a case of rape, and the majority of the court held that there could not be a lawful conviction of the offense of rape on the testimony of the woman alone, unless there were some "concurrent circumstances" which tended to corroborate her evidence. This court, however, held, in the case of *Fields* v. *State,* 2 *Ga. App.* 41 (58 S. E. 327), that in a case of assault with intent to rape the jury was authorized to convict on the uncorroborated testimony of the injured female, and that the ruling of the Supreme Court, supra, did not apply in a case of assault to commit rape; for the reasons stated in the opinion. If, therefore, the jury in this case believed the testimony of the little girl, no other evidence was necessary to support the conviction; but the record discloses "concurrent circumstances" and facts testified to by apparently disinterested witnesses, strongly corroborating her statement. The trial judge having charged the law more favorably to the accused than he was entitled to, and the question of fact being entirely for the jury, and the verdict having been approved by the trial judge, this court, even if it had the right to do so, would not be warranted in setting aside the verdict, unless in the trial of the case some material error of law, prejudicial to the rights of the defendant, was committed.

2. When the case was called for trial, a motion for continuance was made, on the ground that the brother of the defendant, who was a material witness in his behalf, was absent from the court. Alibi was the defense relied upon, and the defendant claimed that he could show, by this absent witness, that on the morning of the

alleged offense he was present with him, some distance from the scene of the offense, "from the time they got up that morning at daybreak until after dinner time;" that they helped their mother about some household affairs until about eight o'clock, or a little thereafter, when he and his brother went to the pasture together, for the purpose of separating the cow and calf; and that after they had done this, they both went back to the house and played marbles together until dinner. The showing for a continuance was deficient in two important particulars. This absent witness was not subpœnaed, and the defendant failed to show that the witness was not absent by his permission, directly or indirectly. On the point that the witness had not been subpœnaed, it was shown that counsel for the defendant had endeavored; just before court convened, to have this witness subpœnaed, but had been unable to locate him, after repeated efforts to do so. In reply to this it was shown by the State that this witness (who was a brother of the defendant and who was twenty-two years of age) was present at the commitment trial, and was not then subpœnaed as a witness to appear at the superior court. Three weeks intervened between the commitment trial and the trial in the superior court, and during this time no diligent effort was made to have the witness subpœnaed or to secure his attendance; and it was further shown that, notwithstanding the alleged importance of his testimony, and the knowledge of the absent brother of the fact that the case would be in order for trial, he had left home and his whereabouts were unknown, and that the family of the defendant made no effort to locate the witness or to assist the officer in serving the subpœna. In addition to these defects in the showing for continuance, the evidence of the absent witness would simply have been cumulative of the testimony of the mother of the defendant, who testified that both the defendant and the absent brother were with her at the house and in the yard the whole morning when the alleged offense was said to have been committed, and that the defendant was not out of her sight during the entire morning. For the reasons above indicated, we can not say that the trial judge abused his discretion in refusing to continue the case. Applications for continuance being addressed to the sound legal discretion of the court, a judgment refusing to continue a case will not be reversed, unless it is manifest that this discretion has been abused.

3. Another ground of the motion for a new trial is based on newly discovered testimony. One of the circumstances of corroboration, as testified to by witnesses for the State, was the appearance and condition of the place pointed out by the little girl, where she said the assault was made. These witnesses testified that the ground and the straw at this place indicated that some scuffle or struggle had there recently taken place. An affidavit of the sister-in-law of the defendant was presented, in which the affiant stated that about a month before the alleged offense, while returning from a fish fry, she had occasion to leave the road at this point and go to the place where the offense was said to have been committed; that then she noticed that the straw was mashed down; that not knowing that this was the same place pointed out by the little girl as the place where the offense was committed, she said nothing about it and did not appear as a witness on the trial; that since the trial, on learning that the place that she noticed before the trial was the place where the offense was alleged to have been committed, she visited the place and found that it was then in the same condition as it was when she first noticed it on the occasion above mentioned. In view of the fact that there was a preliminary trial of the defendant, where it is probable that this testimony for the State was fully disclosed, it would seem that proper diligence by the defendant or his counsel could have secured the testimony of this witness at his trial. Besides, from the character of this newly discovered testimony and the relationship of the witness to the defendant, we do not think it would change the result on another trial. New trials on the ground of newly discovered evidence are not favored by the courts, and a new trial should not be granted on such grounds unless it is shown that the testimony alleged to have been newly discovered could not have been secured at the trial by the exercise of reasonable diligence, and unless it also appears that such newly discovered testimony would be likely to produce a different result on the second trial.

4. The following extract from the charge of the court was excepted to as erroneous: "A reasonable doubt of the law is one that grows out of the testimony or from the absence of testimony, and leaves a reasonable mind wavering and unsettled, and not satisfied from the evidence. A juror can not create for himself

a doubt and act upon it. He can not raise an artificial or captious doubt in order to acquit. The doubt should be real, and honestly and fairly entertained after all reasonable efforts to find out the facts. The proof should be such as to control and decide the conduct of men in the highest and most important affairs of life, and not a mere conjecture, a fancy, a trivial supposition, a bare possibility of innocence." That part of the above charge which states that "the proof should be such as to control and decide the conduct of men in the highest and most important affairs of life" is objected to as not containing a correct statement of the rule of law in criminal cases. We think the charge on the subject of reasonable doubt, taken together, is an accurate and correct definition of what would be a reasonable doubt. We think that where the proof in any given case would be so strong and conclusive as to control and decide the conduct of men in the highest and most important affairs of life, it would be sufficiently clear and convincing to satisfy their understanding beyond a reasonable doubt. The charge seems to be based substantially on section 987 of the Penal Code and several decisions of the Supreme Court, especially the decision in *Johns* v. *State*, 33 *Ga.* 257.

5. It is insisted that the court erred in charging the jury as follows: "When a witness has been successfully impeached by any of the legal methods known to the law,—that is, where his unworthiness of credit is absolutely established in the minds of the jury,—he ought not to be believed, and it is the duty of the jury to disregard his or her entire testimony, unless it is corroborated; it being, of course, always a matter for the jury whether a witness has been in fact impeached." We do not see any error in this charge, especially when it is considered in connection with the entire charge on the same subject. On the contrary, we think the charge on this subject left the credibility of all the witnesses to be determined by the jury. The excerpt excepted to is exactly in the language approved by the Supreme Court in *Powell* v. *State*, 122 *Ga.* 571 (50 S. E. 369), and substantially in that approved by the Supreme Court in *Ga. R. Co.* v. *Andrews*, 125 *Ga.* 87 (54 S. E. 76), and in *Smith* v. *State*, 109 *Ga.* 479 (53 S. E. 59).                                        *Judgment affirmed.*

POWELL, J., concurring. I concur; but I wish to say that the evidence in the record against the defendant is not to my mind

very satisfactory. As a judge I must believe all the jury and the trial judge believe, and must not reverse a verdict free from legal error. Still, there are some facts not recited by the Chief Judge in his opinion, and which it is not necessary to recite, that cause these personal doubts. I however have neither the power nor the inclination to refuse judicial assent to a verdict thus found and approved. Russell, J., joins in this special concurrence.