## 962. CRAWFORD *v.* THE STATE.

1. That the affidavit upon which an accusation is based is defective, in not properly denominating or describing the offense charged, will not afford ground for quashing the accusation, if the identity of the transaction set forth in the affidavit with that charged to be a crime in the accusation is apparent.

2. That instead of being charged with the offense of being a cheat and swindler one is charged by accusation with "cheating and swindling" will not of itself authorize the accusation to be quashed. That the offense charged is improperly denominated in an indictment or other accusation does not necessarily vitiate such accusation. The test by which the sufficiency of the accusation, as well as the particular offense charged against the defendant, is to be determined is not the denomination which the pleader applies to the offense, but the nature of the criminal act alleged, and the fulness with which the act is set forth.

3. An allegation that certain representations were fraudulent is a sufficient statement that such representations were made with intent to defraud.

3. (*a*) An intent to defraud by false representations is sufficiently alleged when such representations are charged as fraudulently made.

3. (*b*) One may be defrauded by representations the truth or falsity of which has not been investigated.

4. The solicitor of a city court has the right to amend an accusation, prior to arraignment; and, in the absence of proof to the contrary, interlineations appearing in an accusation will be presumed to have been made at the proper time and by the proper authority.

5. Where a presentment is returned within the time required by the statute of limitations, and a nolle prosequi is thereafter entered thereon for any informality, the prosecution may be continued by an accusation in the city court having jurisdiction of the offense, provided such accusation be preferred within six months from the date of the order of nolle prosequi.

6. While a new trial should be granted whenever it appears that the finding of a jury has been influenced by improper remarks of a judge, still, as some liberality of expression must be allowed the judge in ruling upon testimony, it should clearly be made to appear both that the remark was improper and that the movant's case was prejudiced thereby.

7. The contents of a writing which has been lost or destroyed or otherwise has become inaccessible may be proved by a properly authenticated copy of that writing, appearing in the brief of evidence which was approved by the trial judge upon a former trial between the same parties.

8. Assignments of error which do not direct the attention of the court to the specific error of which complaint is made will not be considered.

9. Where a paper containing the finding of a jury between the same parties is admitted by the court without concealment of the former verdict, and the jury are properly cautioned by the court, it is not to be presumed that the jury were influenced in their finding by knowledge of the former verdict.

10. A new trial will not be granted upon minor inaccuracies of a court's. charge, appearing in disjointed fragments, where, by an examination of the charge as a whole, the apparent errors are dissipated.

11. Where a defendant is charged with the offense of being a common cheat and swindler by means of specific false representations, which he is alleged to have made, the fact that the party alleged to have been defrauded did not exercise reasonable diligence in preventing the fraud affords no defense to the accused.

12. Where one, either by false representations or by fraudulent concealment of material facts, deceives prospective purchasers of property and induces them to purchase, to their damage, what they otherwise would not have purchased, the belief of the seller that he is giving full value · to the purchaser is immaterial, unless the evidence shows that either the seller himself or some one else has acquainted the purchaser with all of the material facts as they really exist in relation to the transaction as to which he has been deceived. One can not be deceived by false representations which he knows to be false; but on the other hand, it. will not be presumed, in favor of one who has made false representations, that the party to whom these representations were made knew · them to be untrue.

13. The requests contained in the 18th and 19th grounds· of the amended motion are fully covered in the charge of the court to the jury, and hence it was not error to refuse these requests.

14. The evidence authorized the verdict.

Accusation of misdemeanor, from city court of Bainbridge—· Judge Harrell. January 6, 1908.

Submitted February 25.—Decided September 30, 1908.

*T. S. Hawes,* for plaintiff in error.

RUSSSELL, J. J. R. Crawford was tried in the city court of Bainbridge, upon an accusation charging him, jointly with one J. R. D. Laster, with the offense of cheating and swindling. For a former report of this case, see 117 *Ga.* 247. The jury returned a verdict of guilty, and the defendant's motion for new trial was overruled. The accusation was based upon an affidavit made by one Thomas Chason on April 18, 1907, alleging the offense to have been committed on September 22, 1900. The accusation was as follows: "State of Georgia, Decatur County. In the city court of Bainbridge, March term, 1907, held in April of said year. The following accusation is founded upon the foregoing affidavit.

of Thomas Chason, who now, in the name and behalf of the citizens of Georgia, charges and accuses J. R. D. Laster and J. R. Crawford with the offense of cheating and swindling, for that the said J. R. D. Laster and J. R. Crawford did, on the 22 day of September in the year 1900, in the county of Decatur, then and there unlawfully and with force and arms did falsely and fraudulently represent to Chason & Reynolds, a firm composed of Thomas Chason and J. F. Reynolds, that said Crawford and Laster were the owners of all the timber on a place known as the Harvey place, in said county and State, and bounded on the east by the lands of Adam Rambo and Joe Collier, and on the north by the lands of A. Fort and J. R. Crawford; on the west by the river road, and on the south, commencing on the east boundary, by lands of Ike McGill, Cassie Williams, and Caroline Hopkins, and thence the balance of the said south line by a road leading from what was then the mill of Chason & Reynolds to the Harvey landing on the Chattahoochee river, and did thus induce said Chason & Reynolds to purchase all of said timber on said land that measured twelve inches at the stump and eighteen inches from the ground, for the sum of five hundred dollars, said leased timber estimated to be about three hundred and fifty acres, when in truth and in fact about two hundred acres of said land and said timber was not the property of said Laster and Crawford, which fact was well known to the said Laster and Crawford at the time they made said false and fraudulent representations, and was not known by said Chason & Reynolds, and, by said deceitful means and artful practices, did cheat and defraud the said Chason & Reynolds of the sum of $400.00, the value of the timber that did not belong to the said Crawford and Laster, and contrary to the laws of said State, the good order, peace, and dignity thereof. And deponent aforesaid, in the name and behalf of the citizens of Georgia, further charges and accuses the said J. R. D. Laster and J. R. Crawford with having committed the offense of cheating and swindling, for that, on the day aforesaid and in the County and State aforesaid, the said defendants did execute and deliver to the said Chason & Reynolds a lease to all the timber on the place known as the Harvey place, between the boundaries hereafter described: bounded on the east by the lands of Adam Rambo and Joe Collier, on the north by the lands of A. Fort and J. R. Crawford, on the

west by the river road, on the south commencing on the east boundary by the lands of Ike McGill, Cassie Williams, and Caroline Hopkins, thence the balance of the said south line by road running from mill of Chason & Reynolds, to the Harvey landing on the Chattahoochee river; the timber on said lands to be cut down to twelve inches at the stump and eighteen inches from the ground; the lease to remain operative three years from September 22, 1900; and when the description in said contract of land was being written by the prosecutor, the said defendants, Laster and Crawford, allowed him (the prosecutor) to insert, 'bounded on the west by lands of Adam Rambo and Joe Collier,' knowing at the time that this was not the proper boundary on the east, and, by remaining silent and not giving the proper information, did use deceitful means and artful practices, by reason of which said lease contained 350 acres of land, whereas the proper boundary was 'bounded on the east by lands of Adam Rambo' alone, which would have made 150 acres as the proper acreage of timber, instead of 350, whereby the said Chason & Reynolds were deceived and defrauded and suffered loss in the sum of $400.00, the same being the value of the timber that did not belong to the said Laster and Crawford, they the said Chason & Reynolds believing, at the time, that said boundary on the east was in fact by the lands of J. Collier; and they, the said Crawford and Laster, knew that the said Chason & Reynolds so believed, and thus, by using deceitful means and artful practises, did fraudulently cheat and swindle the said Chason & Reynolds, contrary to the laws of said State, the good order, peace, and dignity thereof. Deponent further alleges, that a bill of indictment was regularly found by the grand jurors of said county against said defendants at the November term, 1901, of the superior court of said county, and that the case thus made has been pending in the superior court, the Supreme Court of Georgia, and the city court of Bainbridge, up to this date, when said bill of indictment was, for informality, nolle prossed in open court by the State, and this accusation was immediately preferred in lieu thereof.—M. E. O'Neal, Solicitor City Court of Bainbridge.—Thomas Chason, Prosecutor."

Upon arraignment the defendant demurred to the accusation, upon the following grounds: (1) That the affidavit on which the accusation is founded charges no crime against these defendants.

(2) That the accusation filed in said case charges no crime against these defendants; and, for said reason, said affidavit and said accusation should be quashed. (3) That whatever crime, if any, was committed was barred by the statute of limitations, on the face of the accusation.—For special demurrer the defendants say: (1) That the affidavit is not sufficient upon which to base an accusation; for the reason that it charges defendants with no crime; nor could an accusation charging any crime be based on said affidavit; and, under the law of the city court of Bainbridge, an accusation must be founded on an affidavit. (2) That there is no such offense or crime in the State of Georgia as "cheating and swindling;" and for this reason the affidavit charges no crime. (3) That the accusation based on said affidavit accuses the defendants of committing no crime; for the reason that they are only charged with the offense of cheating and swindling, which is not a crime under the laws of Georgia. (4) Because said indictment fails to allege that the representations, if any were made, were made for the purpose of, or with the intention of, defrauding Chason & Reynolds. (5) Because said indictment, in the first count thereof, fails to allege that the two hundred acres shortage could not, by reasonable diligence, have been discovered and known to the said Chason & Reynolds. (6) Because said indictment is indefinite and uncertain, in that it alleges that "said leased timber estimated to be about three hundred and fifty acres," when in truth and in fact about two hundred acres of said land and timber was not the property of said Laster and Crawford, and fails to state who estimated the amount to be about three hundred and fifty acres, and who estimated the shortage to be about two hundred acres; and for the reason that "about three hundred and fifty acres" fails to allege any definite amount of land; and for the further reason that "about two hundred acres short" fails to allege or show the amount of the shortage, because said accusation shows on its face that Chason & Reynolds only leased the timber twelve inches at the stump eighteen inches from the ground, and shows that they did not lease the land, and said indictment fails to show that any timber twelve inches at the stump eighteen inches from the ground was situated on the land which the accusation alleges to be short; and said accusation fails to allege how much timber of the character described was situated

on the land that was short. (7) Because said indictment alleges on its face that defendants offered to sell Chason & Reynolds the timber on the Harvey place, and nowhere alleges that the timber received by Chason & Reynolds was not all the timber on the Harvey place, and fails to allege that Chason & Reynolds were not thoroughly familiar with the Harvey place, and that said Chason & Reynolds did not know all the lands and timber situated on the Harvey place, or that they could not have discovered, by ordinary diligence, all of the lands and timber situated on the said Harvey place. (8) Because said accusation shows on its face that it has been interlined, erased, and changed since said accusation was filed. (9) Because said accusation shows on its face that the crime, if any is charged against these defendants, is barred by the statute of limitations; for the reason that the crime is alleged to have been committed on September 22, 1900, and the accusation and the affidavit on which it is based were made and filed on the 18th day of April, 1907, and the accusation does not show that any indictment or accusation has been heretofore filed, charging these defendants with the particular offense or crime with which they are now charged, and fails to show that any valid charge or crime relating to this transaction was ever made against these defendants. (10) Because said accusation shows on its face that the description of the property or timber sold to Chason & Reynolds by these defendants was reduced to writing, and because said accusation fails to set out the description contained in said writing. (11) Because said accusation fails to state that the defendants, by remaining silent at the time that it is alleged that the prosecutor inserted the words "bounded on the east by the lands of Adam Rambo and J. Collier," in the said lease, acted fraudulently and intended to deceive the prosecutor or Chason & Reynolds, and that the defendants purposely resorted to such conduct as a means of obtaining money or other thing of value from the persons alleged to have been deceived. (12) Because said accusation fails to allege that Chason & Reynolds relied on either the statements of the defendants or the silence of the defendants and were thereby deceived. (13) Because the accusation fails to allege what deceitful means and artful practices were used by the defendants.

The points raised by the demurrer may be summarized into five heads. (1) The insufficiency of the affidavit. (2) The failure to properly denominate the crime. (3) That the offense is not sufficiently set forth to put the defendants properly upon their defense. (4) That the accusation has been interlined and changed since it was filed. (5) That it appears, from the accusation, that the offense charged against the defendant was barred by the statute of limitations. We shall consider these objections raised to the form of the accusation seriatim.

1. The fact that the affidavit upon which the accusation was based may or may not have been defective in describing the offense will not afford ground for quashing the accusation, if the identity of the transaction set forth in the affidavit with that charged by the accusation to be a crime is apparent. It has frequently been held that an affidavit charging merely that the defendant committed the offense of misdemeanor is ample basis for an accusation in which a criminal act referred to by the affidavit is distinctly and properly set forth and every material particular sufficiently amplified to enable the accused to prepare for his defense. The defendant in a criminal case proceeding by accusation against him can derive no benefit, nor does he suffer any injury, from the fact that the affidavit may be but a mere skeleton which brings him into court.

2. Another point raised by the demurrer, in more than one of its subdivisions, is that the offense of which the defendant was accused is denominated in the accusation as "cheating and swindling." It is true that the statute declares that one guilty of certain acts is a common cheat and swindler, and does not refer to the offense as being cheating and swindling. That the offense is improperly denominated in an indictment or other accusation will not necessarily vitiate the accusation. The test by which the sufficiency of the accusation, as well as the particular offense which is charged against a defendant, is to be determined is not the denomination applied to it by the pleader, but the nature of the criminal act alleged, and the fulness with which the act is set forth. We would have no hesitation in holding that if the offense was not denominated at all, an indictment charging even a felony would be sufficient, if the accused were properly charged with the commission of such acts as rendered him guilty of a felony, and.

indicated beyond question the specific felony of which he would be guilty under the law if the allegations were proved.

3. The third complaint of the demurrer is that the accusation fails, in several particulars, to allege enough to constitute the crime of being a common cheat and swindler, so as to call upon the defendant to defend. In the fourth ground of the demurrer it is stated that the indictment fails to allege that the representations, if any were made, were made with the intent of defrauding the prosecutors. The statement of the accusation, in each of its counts, that the representations were fraudulent, is sufficient answer to this ground of the demurrer. The usual meaning of the word "fraudulent," as applied to representations, is a representation made with the intent to defraud.

The 5th ground of the demurrer complains that the indictment is insufficient because it fails to allege that the shortage of 200 acres of timber land could not have been discovered by reasonable diligence on the part of the prosecutor. Such an allegation may be proper in some cases of cheating and swindling, but it is not indispensable that it should be alleged in every accusation of that offense. In some cases where one purports to disclose all of the facts, or is under duty to disclose them, there may be no duty on the part of another dealing with him to make any inquiry or to attempt to discover whether the representations being made to him are true or untrue. To hold, for instance, that one who may have defrauded another by exhibition of written muniments of title (ostensibly genuine) can not be prosecuted criminally unless he who is sought to be defrauded has used all diligence to detect the fraud, and has perhaps in fact prevented it, would be to our minds an unnatural ruling. A citizen has the right to rely, so far as the criminal law is concerned, upon representations made to him by one with whom he deals which are apparently reasonable and truthful, and he who falsely, fraudulently, and intentionally abuses this confidence, so absolutely necessary to the conduct of commercial transactions, must be made to know that he does so at his peril.

A sufficient reply to the objections raised by the 6th and 7th grounds of the demurrer is that it is not required that the accusation should set forth all of the evidence which it may be

necessary to introduce to support its statements. The accusation in the present instance is amply specific.

4. If the fact that an accusation has been interlined or changed subsequently to the filing can properly afford ground for special demurrer, the court did not in the present instance err in overruling the 8th special ground of the demurrer. Not only has the solicitor of a city court the right to amend an accusation at any time prior to the arraignment (*Goldsmith* v. *State,* 2 *Ga. App.* 283, 58 S. E. 486), but, in the absence of proof, any interlineations appearing in an accusation, or even in an indictment, would be presumed to have been made prior to its return into court.

5. There is no merit in the demurrer alleging that the accusation was barred by the statute of limitations. It is distinctly alleged in the accusation, as well as in the affidavit, that an indictment which had been returned at the November term, 1901, for the same offense had, upon the day of the filing of the accusation, been "nolle prossed by the State," and that the accusation was for the same offense and criminal act as that charged in the indictment as to which a nolle prosequi had been entered. The original indictment was found within two years from the time the offense was alleged to have been committed, and was transferred to the city court of Bainbridge. This transfer gave the city court of Bainbridge full jurisdiction to dispose of the case in its entirety, both as to matters of form and of substance. The case was not altered by reason of the fact that it originated by presentment of the grand jury, instead of by accusation in the city court. Both presentments and accusations are mere pleadings. The effect of the order of the judge of the superior court in transferring the case was to give to the city court of Bainbridge jurisdiction to dispose of not only such pleadings as might be in existence at the time of the transfer, but any other pleadings as well, which might be necessary in the proper conclusion of the judicial investigation remitted to it. We are clear in the opinion that §30 of the Penal Code, which provides that "if the indictment is found within the time limited, and for any informality shall be quashed or nol. pros'd, a new indictment may be found and prosecuted within six months from the time the first is quashed or nol. pros'd," applies interchangeably to indictments, presentments, or accusations.

6. After conviction the defendant filed a motion for new trial, upon the general grounds, which was thereafter amended by the addition of twenty-two other assignments of error. In the 4th ground of the amended motion it was insisted that the court erred in requiring the defendant's counsel, in the presence of the jury, to produce a postal card alleged to have been written by the defendant, which the defendant had introduced in evidence on a former trial of the case. From the colloquy between the court and the defendant's counsel, which appears in the record, it seems that the only statement by the court upon this point was, "I insist, if·you have these papers, that you will have to turn them over." Mr. Hawes, the defendant's counsel, declined to answer whether he had ever seen the postal card and lease in question, upon the ground that he was not compellable to testify; and it does not appear that the court thereafter made any further ruling or any remark of any kind in regard to this matter. We would be far from sustaining a verdict in a case where it appeared that the finding of the jury was influenced by an improper remark which could clearly be held to have been prejudicial to a party in the case; but we have several times held that some liberality of expression must be allowed the trial judge in ruling upon testimony; and at the time the judge uttered the remark of which complaint is made, the State had the right to prove, and in fact was required to prove (in advance of establishing the contents of the postal card in question aliunde), that the original was either lost or destroyed, or that it was otherwise beyond the power of the State to produce it. Mr. Hawes not having, at the time of the court's statement, asserted the claim of privilege, it was not improper for the court to require the production of material written testimony as to which no exemption had been claimed. We fail to see that the remark of the court could have been prejudicial to the defendant; and, so far as appears from the record, the court did not finally peremptorily order the production of the postal card, but, on the contrary, appears to have held with Mr. Hawes, that his possession of the original postal card, if indeed he had it, was privileged, for later in the trial the contents of the postal card were proved by a copy contained in the record of the former trial of the case.

7. The admission of the above-stated copy of the postal card forms the basis for the 5th ground of the amended motion; and, in view of what we have already said, we find no merit in the objection contained in this ground of the motion. The original postal card written by the defendant, as appears from the record, was introduced by him on a former trial of the case, and returned by the jury with the other papers to the court. It is immaterial whether, as appears from some of the evidence, the postal card then passed into the possession of the former counsel for the defendant or not. If it did, it was inaccessible to the State, on account of the privilege which attached to it. It was as inaccessible as if it had been in the possession of the defendant himself. If the original postal card was lost, it was likewise inaccessible. If material to the State's case as an admission on the part of the defendant, the State had the right to prove its contents; and we know no better way of doing this than by the introduction of the copy contained in the brief of the evidence at the former trial, presented by the defendant and approved by the presiding judge. It is true that the substantial contents might have been shown by any witness who remembered the contents of the writing in the original which was inaccessible, but the exact contents would be much more likely to be ascertained from the record contained in the brief of evidence which the trial judge had officially verified. It was not an introduction of a copy in lieu of the original, but rather the authentication of the contents of the lost writing.

8. Complaint is made in the 6th ground of the amended motion that the court, in passing upon the admissibility of the record of the former trial, or some portion of it, remarked, "It appears to be in Judge Bower's handwriting. I will not allow you to introduce this record in evidence. You can take it and use it to assist you." The specific assignment of error is, that this statement of the court was error, for the reason that the defendant had the right to introduce the record for the purpose of contradicting the testimony of the witness who was on the stand, as well as to show that the original record had been changed and the word "defendant" inserted in lieu of the word "State;" and that the court further erred in making the statement that the interlineation appeared to have been made in Judge Bower's handwriting.

This assignment of error appears to us to be without merit, for several reasons. In the first place, it is not stated in what manner the statement of the judge, that the interlineation was in Judge Bower's handwriting, could have hurt the defendant. Doubtless the judge was familiar with Judge Bower's handwriting, and naturally used this statement as an assertion of the presumption that the record had not been improperly interlined. But whether the remark was spontaneous or was well considered, we are unable to say that the judge erred, because the assignment does not direct our attention to the specific error complained of. As to the contention that the defendant had the right to introduce the record approved by the court in a former trial, it is plain that the court did not err in rejecting it at the time and in the manner in which it was done. If the defendant had offered the record at a proper time, the court might have erred in rejecting it. But it appears from the assignment of error itself that the record, if offered at all and rejected, as complained of by the defendant, was offered while Dr. Chason was on the stand, and without any request that he be temporarily withdrawn to permit the introduction of other testimony. Two witnesses can not be put upon the stand at the same time; nor is the introduction of written testimony, without the special permission of the court, permissible while a witness is upon the stand and undergoing cross-examination.

9. While we think it would perhaps have been better for the court to have concealed the verdict of the jury which had formerly convicted the defendant, and which appeared upon the indictment which was introduced in evidence, still, to do this or to decline was a matter of discretion on the part of the trial judge; and we can not say that his discretion was abused, or even that the defendant's case was prejudiced by his refusal to conceal the prior verdict of guilty. The court cautioned the jury that they were to be guided only by the evidence; and we can not assume that the jury would be any more influenced by ascertaining from a writing that the defendant on trial had been theretofore convicted of an offense than if they had had knowledge of that fact from general rumor, or that a fair jury would be influenced by either.

10, 11. Numerous exceptions are taken to the instructions of the court embodied in the 8th, 9th, 10th, 11th, 12th, 13th and

14th grounds of the amended motion. After a careful review of the charge as a whole, we are more than ever impressed with the statement of Judge Bleckley in *Brown* v. *Matthews, 79 Ga.* 1 (4 S. E. 13), that "A charge, torn to pieces and scattered in disjointed fragments, may seem objectionable, although when put together and considered as a whole it may be perfectly sound. The full charge being in the record, what it lacks when divided is supplied when the parts are all united. United they stand, divided they fall." A similar charge upon the subject of reasonable doubt to that complained of here was approved by this court in *Parker* v. *State, 3 Ga. App.* 336 (59 S. E. 823), and each of the other excerpts presented principles of law abstractly correct, and which, when considered and qualified by other instructions given in connection with them, fairly presented the law of the case to the jury. In so far as the omission of the court to call the attention of the jury to lack of reasonable diligence, by the exercise of which the persons alleged to have been defended might have prevented a fraud, and failing in which the defendant could not be convicted, is concerned, as we have already intimated, a charge upon this subject was not required and would not have been correct. Frequently, from the less diligence used by the defrauded party, and even in case of his total imbecility and consequent inability to use any diligence, arises the greatest necessity that the State should protect such a citizen against those deceitful means and artful practices of which he may become the easiest prey.

12. The 15th, 16th and 17th grounds of the amended motion allege error upon the court's refusal to give in charge certain instructions which were properly requested in writing. The requests set forth in the 15th and 16th grounds were made in the endeavor to have the court instruct the jury, among other things, that if the defendant believed that the amount reduced from the contract price was to cover the difference between the amount of timber represented and the true amount owned by the defendants, then the defendant could not be convicted. There was evidence to the effect that in the original negotiations the defendants endeavored to sell the property in question for $750, but that, in the consummation of the trade, the purchasers (the prosecutors) refusing to give more than $500, the latter sum was finally ac-

cepted. The principle embodied in the request, even if it is justified by the statement of the defendant as to his belief, should not have been given in charge. If the defendant, either by false representation or fraudulent concealment of material facts in the transaction, deceived the purchasers of the property, and induced them to purchase what they otherwise would not have purchased, to their injury and damage, it would be wholly immaterial that the seller, the defendant, believed they were given full value on account of the reduction of the price, or believed that the reduction of the price was made to cover the amount of value which he had represented was being conveyed, unless he had undeceived the purchasers as to the true amount of their purchase, or unless the evidence showed that some one else had undeceived them prior to the consummation of the contract and the payment of the money. It would never do for the court to charge baldly that if the defendant believed that the contract had been changed he must be acquitted, no matter what were the true facts of the case. It is, of course, true that in every case where one is accused of being a cheat and swindler, the jury should be instructed that if they believe that the intent to defraud was lacking, the defendant should be acquitted, and this was clearly stated to the jury by the court in the charge. But as the judge was not required to give the requests unless they were in all respects legal and proper, the court did not err in refusing those contained in the 15th and 16th grounds. The court's charge upon this point was as favorable to the defendant as he had any right to expect, when the jury was instructed, "I charge you further, gentlemen, that if you are satisfied, from the testimony in this case, that either Dr. Chason or Mr. Reynolds knew, at the time they made this purchase, that the title to that property was not in Crawford and Laster, you would not be authorized to convict the defendants."

13. The 18th and 19th grounds of the amended motion except to the refusal of the court to charge as follows: (18) "I charge you, gentlemen, that the State is required to prove to your satisfaction, beyond a reasonable doubt, that the alleged representations were made by the defendant, and that they were known by the defendant to be false, that they were made by the defendant for the purpose of deceiving Chason & Reynolds, and that as a re-

sult thereof Chason & Reynolds were defrauded. I charge you, gentlemen, that a mistake by the defendant as to the amount of land owned, or as to the boundaries of the land, or as to the number of acres, would not make him guilty of the crime charged, and unless you are satisfied, from the evidence, that the representations, even if false, were not a mistake, or if you have a reasonable doubt as to whether the representations were the result of a mistake, it would be your duty to acquit the defendant." (19) "I charge you, gentlemen, that before you would be authorized to convict the defendant, you must be satisfied beyond a reasonable doubt, from the evidence, that the representations alleged in the accusation were false. If you are satisfied, beyond a reasonable doubt, that the representations were false, then you must go further and be satisfied from the evidence, beyond a reasonable doubt, that the defendant knew that each of the representations were false; and further still, you must be satisfied beyond a reasonable doubt, from the evidence, not only that the representations were false, and were known by the accused to be false, but you must be further satisfied beyond a reasonable doubt, from the evidence, that the accused intended to deceive the parties named in the accusation, and further, you must be satisfied beyond a reasonable doubt, from the evidence, that the accused purposely resorted to the particular means of obtaining the money or other thing of value from the person alleged to have been deceived; and you must be further satisfied beyond a reasonable doubt, from the evidence, that the parties alleged in the accusation were actually deceived and defrauded as a result of the charges alleged in the accusation; that is, the acts alleged must have been the sole and only cause which caused the parties, alleged to have been deceived, to have been so deceived. If you have a reasonable doubt as to any of these propositions, gentlemen, it would be your duty to acquit the defendant."

In so far as the first portion of the request contained in the 18th ground of the motion is concerned, the principle had already been given to the jury in the instruction which we have quoted above; and the law favorable to the defendant's defense, that his mistake was an honest one, was equally well presented in the general charge. The court, in the earlier portion of the charge, instructed the jury as follows: "Before you would be

authorized, gentlemen, to convict either of the defendants, you would have to be satisfied, beyond a reasonable doubt, that at the time this trade was made, the defendants, Crawford and Laster, knowingly made false representations as to the number of acres conveyed in this lease." And later on, in the charge, the jury were instructed upon this subject as follows: "The jury will look to all these facts and circumstances and determine what was in the *minds of the defendants* at the time this lease, this trade, was made. The jury, before they could convict in this case, would have to be satisfied beyond a reasonable doubt that the defendants, Crawford and Laster, knew, at the time they made this trade, that they were selling more timber than they owned. If the defendants really and in truth and in good faith thought that they owned this timber, and they sold it under those circumstances, then, if you believe that, I charge you, you would find the defendants 'not guilty."

14. After a painstaking investigation of the very voluminous record in this case, and after an investigation of the assignments of error, which are so numerous as to satisfy us that every plausible reason for a new trial which the learning and ingenuity of the very able counsel for the plaintiff in error could suggest has been skilfully presented, we are unable to find any error which would warrant a reversal of the judgment refusing a new trial. The evidence in behalf of the State was sufficient to authorize the verdict. The finding of the jury has been approved by the trial judge who presided. Two juries have found the same verdict. As a matter of law, there is every reason why the judgment should be                                        *Affirmed.*