37690. BROCK *v.* AVERY COMPANY, INC., *et al.*

DECIDED JUNE 24, 1959—REHEARING DENIED JULY 16, 1959.

*Barrett & Hayes, Mose S. Hayes, Rupert A. Brown, R. Howard Gordon,* for plaintiff in error.

*Greene, Neely, Buckley & De Rieux, B. Carl Buice, Nall, Miller, Cadenhead & Dennis, A. Paul Cadenhead,* contra.

FELTON, Chief Judge. ■ The evidence discloses that shortly after 11 p.m. on January 30, 1956, the defendant Godwin was driving the tractor-trailer of his employer, the Avery Company, in a northerly direction on U. S. Highway 29 between Danielsville and Royston. At a point about six miles northeast of Danielsville, opposite the Jones Chapel Church, the Avery trailer, which was a flat-type and which was unloaded, was struck on the left rear wheels by an oncoming Plymouth automobile driven by one Bagwell and proceeding in a southerly direction on the highway. The Avery tractor-trailer stopped in the right-hand traffic lane within a few feet from the point of impact and the Bagwell car came to rest in a ditch on the opposite side of the road, facing in an easterly direction with at least one of its headlights shining across the highway. The defendant Godwin dismounted from the cab of his tractor and began to flag down the Great Southern tractor-trailer, driven by the defendant Belue, which was approaching the scene from the north. Belue stopped his tractor in the southbound lane some six to eight feet north of the Avery tractor, thus almost completely blocking the roadway. The headlights of the Great Southern tractor were shining down the road toward the south. Before any flares or warning devices were placed on the roadway, a Chrysler automobile driven by the plaintiff's son approached from the south at a speed of 45 to 50 miles per hour and collided with the right rear portion of the Avery trailer, killing the plaintiff's son instantly.

Godwin testified that before dismounting from his cab after the Bagwell collision, he had applied the trailer brakes which automatically illuminate a large red stop light in the rear of the trailer, that he had also turned on the signal blinker lights on the left side of his unit and that there were six warning lights plus a regular tail light on the rear of the trailer, all of which were in working order when he checked them at a truck stop some three hours earlier. The road to the rear of the Avery trailer was straight for a distance of at least a quarter of a mile. Under these circumstances, the jury could find that the plaintiff's son, in the exercise of ordinary care, could have discovered and avoided the consequences to himself caused by

the defendants' negligence, and the verdict for the defendants was therefore authorized by the evidence. Code § 105-603. The court did not err in overruling the general grounds of the motion for new trial.

■ Ground 4 of the amended motion for a new trial assigns error on the charge of the court relative to "the doctrine of emergency . . . in connection with the alleged negligence" of Godwin and Belue. This charge left to the jury the determination as to whether emergency existed and contained instructions concerning the modified standard of care which the law requires in an emergency. There is no assignment of error as to its substantive content, but it is contended that the evidence does not raise the issue of emergency in relation to the defendants. "A person threatened with an imminent danger is not held to the same circumspection of conduct that he would be held to if he were acting without the compulsion of the emergency. A person has a right to choose even a dangerous course, if the course seems the safest one under the circumstances." *Pacetti* v. *Central of Ga. Ry. Co.*, 6 *Ga. App.* 97, 102 (64 S. E. 302). "The so-called 'doctrine of emergency' thus refers only to those acts, either of the plaintiff or the defendant, which occur immediately following the realization of the peril or crisis and before there is time for mature reflection." *Stripling* v. *Calhoun*, 98 *Ga. App.* 354, 357 (105 S. E. 2d 923). "While of course, questions as to negligence, proximate cause, and whether or not an emergency exists are ordinarily for the determination of the jury, yet in plain and indisputable cases such questions may be resolved by the courts as a matter of law." *Morrow* v. *Southeastern Stages*, 68 *Ga. App.* 142, 148 (22 S. E. 2d 336). The evidence does not disclose any "imminent danger" affecting the actions of Godwin in leaving the Avery tractor-trailer stopped in the northbound lane as described above. It appears that the vehicle could have been moved onto the east shoulder of the roadway after the Bagwell collision and that Godwin's failure so to move it resulted from his misapprehension that the law required him not to move his vehicle until authorities had investigated the same. Likewise, there was no "imminent danger" causing Belue in the Great Southern tractor-trailer to

stop his vehicle in the southbound lane in the manner above described, especially since this traffic lane was unobstructed. Many situations encountered by drivers on the highway are fraught with potential peril, but it is only an imminent and pressing danger directly affecting the actions of the driver which will constitute an emergency in the contemplation of the law. No such imminent danger appears here, and the trial court erred in charging the jury on the doctrine of emergency in respect to the actions of Godwin and Belue.

■ Ground 5 of the amended motion for new trial assigns error on the charge of the court as to "the determination of the preponderance of the evidence." This charge was phrased substantially in the langauge of Code § 38-107, but omits the phrase which authorizes the jury to consider "the nature of the facts to which they [the witnesses] testified." Ground 10 assigns as error this same omission plus an additional variation from the language of the Code section but charging that the jury could consider the witnesses' "interest or want of interest in the case or its result." These alleged errors, even if harmful, will not likely occur upon a retrial of the case.

■ Ground 6 assigns error on the charge to the jury concerning the construction of the subparagraph 15 of Code (Ann.) § 68-1670, which prohibits parking within 12 feet of the center line of a state-aid road or highway. The court charged in substance that this section is not to be so construed as to require an impossibility, and that in an emergency a driver may stop or park within 12 feet of the center line if there is no other available space for parking and provided the vehicle is parked as far from the center line as possible under the circumstances. The charging of this principle constitutes error in the instant case, since the evidence shows that neither of the tractor-trailers · was disabled and that each could have been parked more than 12 feet from the center line either at the point of stopping or in the immediate vicinity thereof.

■ Ground 7 of the amended motion for a new trial assigns error on the charge in connection with certain provisions of Code (Ann.) § 68-1618 (a): "The driver of any vehicle involved in an accident resulting in injury to or death of any

person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 68-1620. Every such stop shall be made without obstructing traffic more than is necessary." The court charged as follows: "If upon consideration of the facts and circumstances of the case as shown by the evidence, the jury finds that there was a failure to exercise ordinary care which would constitute negligence as a matter of fact, then that negligence, after being so found as a matter of fact, would constitute negligence per se in violation of the statute and the court instructs you that the last sentence of this section 68-1618 is of such character that it does not fall within the classification of a fixed requirement but would involve a consideration by the jury of the facts and circumstances of the case in respect of the necessity of stopping with or without obstructing traffic at the time and place and under the circumstances under investigation." Movant contends that a violation of the provision relative to stopping without obstructing traffic is negligence per se and the charge is erroneous because "it commingles common-law negligence or negligence as a matter of fact with negligence as a matter of law or negligence per se and the methods by which established." A violation of this portion of Code (Ann.) § 68-1618 (a) set forth above would not constitute negligence per se as it is too indefinite for enforcement, but it does furnish a rule of civil conduct under the circumstances of each case, and the jury may find negligence in fact as a result of its violation. That portion of the charge that this negligence "after being so found as a matter of fact would constitute negligence per se as a violation of the statute" is superfluous and might tend to confuse the jury, but is not likely to occur upon a retrial of the case.

■ Ground 8 assigns error on the inclusion in the charge of certain inapplicable provisions of Subparagraph (a) of Code (Ann.) § 68-1710: "Whenever a vehicle is lawfully parked upon a street or highway during the hours between a half hour after sunset and a half hour before sunrise and in the event

there is sufficient light to reveal any person or object within a distance of 500 feet upon such street or highway no lights need be displayed upon such parked vehicle." "Where the court gives in charge an entire Code section, a part of which is inapplicable to the issues, this is not ground for reversal unless it appears that the inapplicable portion was calculated to mislead or erroneously affect the jury in its rendition of the verdict." *Smith* v. *Payne*, 85 *Ga. App.* 693, 699 (70 S. E. 2d 163). No such adverse effect on the jury appears in this case and there is no merit in this ground.

■ Ground 9 has been expressly abandoned and ground 10 has been discussed in division 3 above.

■ Ground 11 assigns error on a portion of the charge which, it is contended, allowed the jury to consider as a matter of defense the alleged intoxication of the plaintiff's son at the time of the collision, when there was no evidence sufficient to raise such issue. It appears that the defendants Avery Company and Godwin in their answer to the plaintiff's petition had pleaded "the intoxication of Brock as a bar to the right of the plaintiff to maintain this action." At an early point in his instructions, the trial judge, when summarizing for the jury the pleadings and contentions of various parties, stated: "These defendants (referring to Avery Company and Godwin) further allege that on the night of the accident and prior thereto Brock had been drinking intoxicating beverages which impaired his mental and physical abilities and the failure of Brock to see the lighted truck in the highway was the result of his impaired ability. These defendants plead the intoxication of Brock as a bar to the right of the plaintiff to maintain this action." At a later point in the charge, the court stated: "Now in respect of the further plea and answer of the defendants Avery and Godwin, it is contended by these defendants that the death of the plaintiff's son resulted proximately from his own negligence and that the plaintiff's son was not in the exercise of ordinary care for his own safety and that, by the exercise of ordinary care, he could have avoided running into the alleged well-lighted trailer of these defendants, and these defendants further contend that on the night of the accident and prior thereto Brock had been

drinking intoxicating beverages which had impaired his mental and physical abilities and the failure of Brock to see the lighted truck was the result of his impaired ability, and they plead the intoxication of Brock as a bar to the right of the plaintiff to maintain her action; and they also claim that on the occasion referred to the plaintiff's son was operating the automobile at an excessive, illegal, and negligent rate of speed of 60 miles an hour and did not have the car under immediate control and his negligence was the proximate cause of his death. The defendants Great Southern and Belue, in their further plea and answer, likewise contend that the occurrence was the proximate result of the negligence of the plaintiff's son and that he was not in the exercise of ordinary care and they also contend that the negligence of the plaintiff's son equalled or preponderated over any act or omission of the defendants Great Southern and Belue and that therefore the plaintiff is not entitled to recover. And then they also claim that the occurrence was brought about by the negligence of the plaintiff's son in conjunction with the negligence of Avery and Godwin and not by reason of any negligence on their own part. That brings us to the portion of the charge that relates to alleged negligence of the plaintiff's son . . ." The court then proceeded to charge certain general applicable principles of law concerning the negligence of a plaintiff and its effects upon his right of recovery. The evidence relative to the consumption of intoxicating beverages by the occupants of the Brock automobile is that of the witness Hudson who was riding as a guest. Hudson testified that he and Billie Brock left Westminster, South Carolina, about 7:30 p.m., that they made stops at two taverns during the evening, that he (Hudson) purchased one beer at each tavern and carried one can of beer into the car with him from the second tavern. Hudson swore positively that he was with Billie Brock all evening and that Brock did not drink any intoxicating beverages. The state patrolman who investigated the wreck testified that Hudson told him at the hospital, "we had two or three beers." "Though declarations made out of court by a witness may be used to impeach the witness, they cannot be treated as substantive evidence to establish the facts which they affirm; and a

charge of the court so treating them, whether expressly or by necessary implication, is erroneous." *Watts* v. *Starr*, 86 *Ga.* 392 (12 S. E. 585). Hudson's testimony was further contradicted by the evidence of the witness James L. Josey, who testified that shortly after the collision "when I was at or near the Chrysler, I saw one beer can was tossed out in the highway, and there was about a couple of cans in the back of the automobile." But even if Hudson's testimony along these lines be entirely disregarded, the mere presence of several beer cans in the Brock automobile does not, without more, serve to raise the issue of intoxication as to its driver. We think that under the circumstances of this case the charge of the court erroneously submitted the issue of intoxication to the jury as part of the "alleged negligence of the plaintiff's son," when there was no evidence sufficient to authorize such a finding. This ruling is not in conflict with *Mayes* v. *Simons*, 189 *Ga.* 845 (8 S. E. 2d 73, 130 A. L. R. 245), *Limbert* v. *Bishop*, 96 *Ga. App.* 652 (101 S. E. 2d 148) and others of similar import. In those cases the court stated to the jury the contentions of the parties as such. In this case the court in the first part of the charge fully stated the contentions of the parties but later on in the charge began picking out certain contentions and immediately following the repetition of a statement of contentions charged the law with reference thereto. In this case this procedure by the court might have had the effect, at least by implication, to impress the jury with the idea that there was sufficient evidence to authorize them to find that the deceased driver of the automobile was driving while under the influence of intoxicating liquor.

■ The court erred in instructing the jury in the instances stated hereinabove and in failing to grant the plaintiff's motion for new trial on the various special grounds indicated. The judgment denying the amended motion for a new trial is therefore reversed.

*Judgment reversed. Quillian and Nichols, JJ., concur.*