### 74919. McNISH v. GILBERT et al.
(361 SE2d 231)

BEASLEY, Judge.

McNish was injured in the course of riding the Gilberts' horse. She sued, alleging negligence in certain particulars, and the court granted summary judgment to defendants, prompting McNish's appeal. The depositions of all of the parties were considered.

On a motion for summary judgment, the evidence must be construed favorably to the party opposing the motion, affording that party the benefit of all reasonable doubts and reasonable inferences. *Fowler v. Ford Motor Credit Co.*, 180 Ga. App. 738, 739 (350 SE2d 319) (1986). The question is whether, under the theory and evidence thus far presented, a jury would be precluded as a matter of law from finding for plaintiff. Put another way, upon the facts alleged and the evidence presented, is an element of the tort of negligence conclusively established against the plaintiff so that a reasonable factfinder could not decide that element in favor of plaintiff? The traditional elements were recently outlined in *Sutter v. Hutchings*, 254 Ga. 194, 196 (1) (327 SE2d 716) (1985), and are implicit in OCGA § 51-1-6.

Plaintiff alleged four failures, or omissions to act, on the part of defendants: "failure to warn of the horse's dangerous propensity to buck; failure to handle the horse in a safe manner which would avoid injury to others; failure to calm the horse or take other preventive measures which would have prevented the horse from bucking and kicking plaintiff; by failing to take any reasonable action, when the defendant (sic) knew or in the exercise of due care, should have

known that their conduct would cause these injuries to plaintiff." The court granted the motion generally, without explication. On appeal, McNish frames the allegations as failure to warn and failure to control.

Viewed most favorably towards plaintiff, the evidence shows that McNish, an experienced horsewoman, and her sister-in-law and brother-in-law went to see the Gilberts about purchasing a two-year-old horse the latter had for sale. McNish wanted to ride the horse, which was out in a pasture, prior to making her final decision about the purchase. A bridle was fetched, and Mrs. Gilbert rode the horse to McNish bareback, with Mr. Gilbert leading it. Before mounting, McNish asked whether the horse bucked. Mrs. Gilbert said she had ridden the horse, children had been on it, and she had never seen it buck. McNish also asked whether the horse was "broke." Mrs. Gilbert says, and McNish admits that she may have told her but does not remember, that it was "green broke," i.e., not fully broken.

While Mr. Gilbert held the reins, McNish mounted and rode about ten feet. The horse began to act "skittish," kicking its feet and "slinging its head." McNish became apprehensive and jumped off. She expressed doubt as to whether to remount, but at her brother-in-law's suggestion, she did so and continued riding, with him holding the reins and leading the horse. After about forty feet it began to move its feet sideways. McNish, fearing the horse was about to buck, jumped off again. Before she reached the ground, the horse kicked her, fracturing her leg.

Here we have a prospective buyer and a seller of a young horse. The buyer bases the seller's breach of legal duties on the seller's knowledge of the horse's propensity to buck. "[T]o support an action for damages for injuries sustained by being bitten or kicked by a horse, it is necessary to show that the horse was vicious and that the owner had knowledge of that fact." *Rodriguez v. Newby*, 131 Ga. App. 651, 653 (206 SE2d 585) (1974). Such a showing is not made when the record "does not reveal any facts which would indicate any prior vicious conduct by the horse, or the defendant owner's knowledge thereof." Id.

The record contains no evidence that the Gilberts knew of the horse's propensity for the type of behavior of which McNish complains, and they deny it. McNish conceded that she assumed it did not buck, based on what they said.

She had also to take into account what she observed and what she previously knew, based on her own experience with young horses and riding bareback as a stranger to this horse. Most importantly, her knowledge of the horse's attitude towards her was fortified by the experience of having to jump off once before, a few minutes earlier, triggered by similar conduct. To say that this time it bucked and the first

time it only acted skittish, and that the Gilberts but not she knew of this bucking propensity, cuts too thin the line between what is known or knowable and what information must be conveyed. The point is, she knew firsthand that she might have to jump off again because of the horse's behavior when she was on it.

Likewise with the factual dispute about whether the Gilberts told her the horse was "broke" or only "green broke." Whether one or the other, its significance fades from materiality because of the first occasion of the horse's behavior, which put her on notice that the horse was not fully broken.

Considering the undisputed facts of this case, no legal duty could be cast upon the sellers to forewarn the prospective buyer that the horse might again act up in such a way as to injure her. The horse itself had already given her notice of its disinclination to let her ride, by its own behavior. "A person cannot undertake to do what obviously is a dangerous thing, even if he is directed by another, without assuming the risks incident thereto and without himself being guilty of such lack of due care for his own safety as to bar him from recovery. See *Fricks v. Knox Corp.*, 84 Ga. App. 5, 10 (65 SE2d 423)." *Forde v. C & S Ga. Corp.*, 178 Ga. App. 400, 402 (343 SE2d 164) (1986).

The knowledge among the parties here was nearly, if not precisely, equal, and a warning from defendants would have to be met with the response "I know." The undisputed facts gave no rise to a duty to warn, because defendants had no knowledge that the horse would "buck" and because plaintiff had equal knowledge that it would manifest an intolerance to her riding, and thus there is no tortious failure to warn as plaintiff alleges.

Appellant also argues that defendants failed to control the horse. This relates to several of the alleged failures enumerated in the complaint. It is undisputed that after she jumped off the first time, when Mr. Gilbert was leading the horse, she chose to ride again. Her brother-in-law suggested she do so, helped her mount, and was leading the horse when she jumped off and was kicked. Thus the facts belie any allegations that defendants failed to control the horse so as to avoid injury to her.

As a matter of law, then, defendants' conduct did not unreasonably create a foreseeable risk to a protected interest of the kind of harm that befell plaintiff, for which they could be held liable.[1]

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

---

[1] See *Fazzolari v. Portland School Dist. No. IJ*, 303 Or. 1 (734 P2d 1326) (1987), and the two cases following, for a scholarly analysis of the development of negligence law, especially the relation of foreseeability and duty.

DECIDED SEPTEMBER 15, 1987.

*Christopher A. Townley*, for appellant.
*Christopher H. Steger, H. Richard Marcus*, for appellees.