A90A1146. TAYLOR v. BLOODWORTH.
(400 SE2d 691)

POPE, Judge.
Appellant/plaintiff Fairow Taylor, Jr., appeals the grant of summary judgment to appellee/defendant Stewart I. Bloodworth, individually and d/b/a Bloodworth Farms in this action for negligence. Taylor was seriously injured when he came in contact with a grain auger on the Bloodworth farm.

In January 1986 Bloodworth arranged with Dooly Farm Services, which employed Taylor as a truck driver, to deliver 6,000 bushels of feed corn to his farm. Taylor delivered approximately nine loads of corn to the farm. On Taylor's first delivery, Bloodworth met him and showed where to back his truck. He then warned Taylor that the augers used to unload the truck were dangerous and he told Taylor that he would keep a man there at all times to operate the machinery and Taylor's job was to dump the truck. Bloodworth told him that he had a friend killed by a similar piece of machinery and specifically told Taylor to stay away from the equipment.

Each unloading would take between 45 minutes and one hour. One man, a farm employee or Bloodworth, would set the gate on the

back of the truck regulating the rate of flow of grain from the truck to the auger. Taylor would sit in the cab of the truck and raise or lower the body of the truck as needed to keep the flow constant. If the flow became too fast, the auger would bind. The day before the accident, a shear pin bolt on the auger had broken, apparently because of an overload. Bloodworth installed a new shear pin bolt and secured it with a double nut. Taylor was present when the repair was made.

On the day of the accident, Bloodworth's employee, Jeff King, started the unloading and, as was customary, went to work grinding feed in a nearby building that was in sight of the auger. Taylor has no recollection of the accident; however, somehow his clothing became entangled with the auger and Taylor was pulled in and severely injured. *Held*:

We affirm. "Although issues of negligence, lack of care in avoiding the negligence of others, lack of care for one's own safety, and assumption of the risk are ordinarily not susceptible to summary adjudication . . . where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion the issue of assumption of risk may be determined on summary judgment." (Punctuation and citations omitted.) *Fagan v. Atnalta, Inc.*, 189 Ga. App. 460 (376 SE2d 204) (1988). "The business invitee on private premises assumes the risk of danger of which he knows . . . and fully comprehends, or which is sufficiently obvious. . . ." (Punctuation omitted.) Id. at 461.

At his deposition, Taylor testified that he was present the day before the accident when the shear pin bolt on the auger had broken. He watched as Bloodworth or one of his employees accomplished the repair of the broken shear pin bolt by replacing it with another bolt. Thus, it is uncontroverted that he had actual knowledge of the repair. Further, the record shows that Taylor was aware that he was hurt by something on the auger shaft, and that he was aware of the danger inherent in the machine.

The record also shows that it was not Taylor's job to be around the auger. Both Bloodworth and King testified that Bloodworth warned Taylor of the danger inherent in the operation of the auger and instructed Taylor that Bloodworth or one of his men would set the gate on the truck to regulate the flow of grain to the auger. If the grain was unloaded too quickly, the auger would overload and bind causing the shear pin bolt to break, as had happened the day before the accident. It was not Taylor's job or responsibility to regulate the gate controlling the flow of grain unloading. Bloodworth had an employee, King, on the site. After seeing that the unloading was begun properly, King went to work grinding feed in a building some 75 to 100 feet away, but within sight of the auger. He told Taylor to call him if the flow slowed down. King also testified that Taylor indicated

to him that this was his last load of the day and that he was in a hurry to get finished. Bloodworth was aware that operation of the auger was a two-man job and had provided an employee to do the dangerous job. Taylor simply ignored Bloodworth's and King's instructions and attempted to do the operation alone, with disastrous personal consequences.

From these facts, we cannot help but conclude, as did the trial court, that Taylor assumed the risk of injury and that Bloodworth is entitled to summary judgment.

*Judgment affirmed. Deen, P. J., Birdsong, Sognier and Cooper, JJ., concur. Carley, C. J., McMurray, P. J., Banke, P. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

When Taylor made the first delivery, Bloodworth told Taylor to be careful and watch out for the auger, as was routine. Taylor knew the machine was inherently dangerous. He understood the term auger to refer only to the screw-like part of the machine that carried the corn up to the grain bin from the pit into which he unloaded it. There was no evidence showing he was aware that, when Bloodworth repaired the machine the day before, the bolt put in to replace one that had sheared off while in operation was extra long. Bloodworth did not warn him about the danger of the longer exposed bolt on the unshielded rotating shaft powering the auger. Taylor swore that while he knew it would be dangerous to fall in the pit and get "chewed up" by the auger, he "had no idea of the danger from the rotating shaft that runs up the side of the auger."

Taylor testified that he was positive he did not come into contact with the shaft which supplied power from a tractor to the auger itself. Other testimony corroborated that Taylor's contact was with the top, rotating shaft of the auger above the gearbox, where bits of clothing and flesh were found after the accident.

Two men were required to perform the unloading operation safely, one to watch the corn and set the gate that regulates the flow of the corn, and another to raise and lower the truck bed. Taylor was supposed to raise and lower the truck bed while Bloodworth's employee King supervised the unloading of the corn into the auger pit. Bloodworth assured Taylor that King would be working with him "at all times," but when Taylor arrived with the last load King left the auger pit to grind feed in an adjacent building about 75 to 100 feet away. While King was gone, Taylor had to walk around the auger to the back of the truck to regulate the flow of the corn, at which time he came into contact with the machine. Taylor testified that he "hollered and hollered" before King "finally" heard him and summoned help.

The parties agree that Taylor was an invitee of Bloodworth Farms and that, as such, appellee owed him the legal duty of exercising ordinary care to keep the premises safe. OCGA § 51-3-1. Appellee insists that Taylor did not show a causal relationship between any breach of this statutory duty and his injuries, and that to presume that because he was injured by the machine Bloodworth had somehow been negligent would make him the insurer of Taylor's safety. See *Brown v. RFC Mgmt.*, 189 Ga. App. 603 (376 SE2d 691) (1988). Appellee further points out that if the invitee has knowledge of the danger co-equal with the landowner, there is no breach of the legal duty and there can be no recovery against the landowner. *Dyer v. Joe Rigatoni's of Atlanta*, 191 Ga. App. 473 (382 SE2d 193) (1989); *Miolen v. Edd Kirby Chevrolet*, 189 Ga. App. 282 (375 SE2d 266) (1988). He reasons that under the undisputed facts, since Taylor had been warned about working around the auger and was already aware of the dangers posed by such machines, he voluntarily acted so as to assume the risks and dangers incident to the known condition. *Williams v. City Ice Co.*, 190 Ga. App. 744 (2) (380 SE2d 341) (1989); *Glass v. Bell*, 190 Ga. App. 159 (378 SE2d 385) (1989).

These principles are not dispositive because there are genuine issues of material fact regarding whether the extended replacement bolt installed by Bloodworth on the unshielded rotating shaft was the proximate cause of Taylor's entanglement on the auger, and whether Taylor comprehended the danger it posed. A further unresolved question of fact involves the necessity of having a two-man crew to work the auger, and if the failure to have another employee present as announced was also a proximate cause of the injury. Taylor claimed he had no knowledge that the machine had been modified such that it posed the hazard now complained of. Nor did he know the dangers incident to fulfilling the other person's function, which required presence near the rotating shaft with the raised bolt. Nor did he know that he would be left to perform the two-person job.

"[A]n analysis of the parties' relative degrees of knowledge and the [landowner's] corresponding duty to warn the plaintiff is meaningless where it is clear that whatever the invitee may have 'known' about the dangerous situation, he was unaware of its dangerous consequences or could not exercise any control over those consequences . . . . [I]t would be illogical to excuse the [landowner's] negligence merely because the plaintiff invitee was aware of a potential peril he could not escape. The true basis of liability in such a case is the *foreseeability* of the consequences by the [landowner], which consequences the plaintiff could not avoid with use of ordinary care. [Cit.]" (Indention omitted.) *Clark v. Carla Gay Dress Co.*, 178 Ga. App. 157, 160 (342 SE2d 468) (1986). " ' "As a general proposition, issues of negligence, contributory negligence and lack of ordinary care for one's

own safety are not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial before a jury. [Cits.] . . ." ' [C]onsidering the reasonable inferences that may be drawn [from the evidence, it] presents matters which should be resolved by the jury. [Cit.]" *Waits v. Makowski*, 191 Ga. App. 794, 796 (383 SE2d 175) (1989). Accord *Brandvain v. Ridgeview Institute*, 188 Ga. App. 106 (4) (372 SE2d 265) (1988).

I am authorized to state that Chief Judge Carley, Presiding Judge McMurray, and Presiding Judge Banke join in this dissent.

DECIDED DECEMBER 5, 1990 —
REHEARING DENIED DECEMBER 20, 1990 — 

*Chambless, Higdon & Carson, Marc T. Treadwell, Gregory J. Spicer*, for appellant.

*Walker, Hulbert, Gray & Byrd, Michael G. Gray, Carl A. Veline, Jr.*, for appellee.