A96A2209. YOUNG et al. v. BRANDT.
(485 SE2d 519)

BIRDSONG, Presiding Judge.

Brandt was injured when a horse threw her and kicked her in the face. The horse was a stallion named Loverboy, trained in dressage. Brandt sued Tamingo Farms, Inc. and Young. Young and

Tamingo each owned one-half interest in Loverboy, and Young was Loverboy's trainer.

Brandt's complaint primarily alleged the defendants were negligent in using hunter-jumper tack on Loverboy rather than dressage tack, failing to use a lunge line, and placing Brandt in a position of unknown danger. Young was Brandt's instructor and invited Brandt to exercise Loverboy at an equestrian center where a competition was to be held the next day. Young took the horse there and had supervision of it but did not control the equestrian center.

Brandt had ridden Loverboy before but always with dressage tack, which was more comfortable and secure for her than hunter-jumper tack. When she saw that Loverboy had been saddled with hunter-jumper tack, she expressed concern but accepted Young's assurance that "You'll be fine." After Brandt had been exercising Loverboy for a few minutes, Young directed Brandt to execute a certain maneuver. As she did so, Loverboy bucked and threw her off. While Brandt was on the ground, she was kicked in the face by Loverboy, causing considerable skeletal damage.

Judgment was entered on the jury's $250,000 verdict in Brandt's favor. Young and Tamingo appeal the judgments and denial of their motions for directed verdict.

Appellants now contend the trial court erred by denying their motion for a directed verdict because any negligence on their part was not the proximate cause of Brandt's injuries, Brandt assumed the risk of injury, and recovery is barred by the Injuries From Equine Activities Act, OCGA § 4-12-1 et seq. *Held*:

1. Appellants have waived review of any claim that the Equine Activities Act provided them immunity from suit as a matter of law. Their motion for judgment notwithstanding the verdict stated: "With this brief, the defendants do not contend that they were entitled to judgment as a matter of law concerning their defense that liability is barred by statute. At trial, a question was raised whether the statutorily required warning signs were posted on the premises where the plaintiff was injured. The presence of the warning signs is an integral element of any claim for statutory immunity. As a result, whether or not the signs were present was properly a jury issue." This statement thus agreed with and acquiesced in the court's decision to submit the question of the act's application to the jury. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further. [Cits.]" *Whisnant v. State*, 178 Ga. App. 742, 744 (2) (344 SE2d 536).

The statement in the motion for j.n.o.v. controls not only review of that motion but review of the motion for directed verdict as well.

"[T]he sole purpose of a motion for judgment notwithstanding the verdict is to permit the court to review and reconsider [its] ruling on the antecedent motion for a directed verdict." *Shetzen v. C. G. Aycock Realty Co.*, 93 Ga. App. 477, 479 (1) (b) (92 SE2d 114). This is to be the court's ruling "on the motion for directed verdict made at the close of all the evidence rather than the one made at the close of plaintiff's evidence." *Wright v. Millines*, 217 Ga. App. 464, 465 (1) (458 SE2d 488).

No issue of the act was raised in the motion made at the close of plaintiff's case, and the only reference in the record to a motion for directed verdict at the close of all evidence appears after a conference in chambers, when appellants' counsel stated: "[W]e would state our motion concerning a sign which was in place we contend at Wills Park. It turns upon statutory immunity from liability. I believe that is enough to say about that." By their later acquiescence to the court's submission of issues under the act to the jury, appellants waived review. *Whisnant*, supra.

2. Because we find that the trial court erred by denying appellants' motion for a directed verdict based on assumption of the risk, we need not address appellants' contention regarding the lack of proximate cause.

3. Appellants contend Brandt conclusively assumed the risk of injury when riding Loverboy. "The defense of assumption of risk requires: ' "(1) that the plaintiff had some actual knowledge of the danger; (2) that he understood and appreciated the risk therefrom, and (3) that he voluntarily exposed himself to such risk." ' [Cit.] Stated another way: ' "(T)he doctrine of the assumption of the risk of danger applies only where the plaintiff, with a full appreciation of the danger involved and without restriction from his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct so that it can be said as a matter of law he has assumed all risk of injury." [Cit.]' [Cit.] . . . ' "In its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone." [Cit.] "In by far the greater number of cases, the consent to assume the risk has not been a matter of express agreement, but has been found to be implied from the conduct of the plaintiff under the circumstances," [Cits.]' [Cit.]" *Gen. Tel. Co. &c. v. Hiers*, 179 Ga. App. 105, 106-107 (2) (345 SE2d 652). Although assumption of the risk is ordinarily a jury question (*Taylor v. Bloodworth*, 198 Ga. App. 186, 187 (400 SE2d 691)), in plain, palpable, and indisputable cases resolution of the issue by a jury is not required. *Moore v. Service Merchandise Co.*, 200 Ga. App. 463, 464 (408 SE2d 480).

Although not properly before us as a matter of defense in this appeal, it must be recognized, nevertheless, that passage of OCGA § 4-12-1 et seq. has substantially changed the law relating to assumption of the risk of injury from engaging in equine activities. The General Assembly of this state has now recognized that as a matter of public policy those who engage in equine activities may incur injuries as a result of the well-known risks associated with those activities and has defined specifically those inherent risks in OCGA § 4-12-2 (7). Thus, when injuries have arisen from risks identified in OCGA § 4-12-2 (7), in most cases, the plaintiff should be found to have assumed the risk, as a matter of law, even when defendants are not asserting the immunity granted under the Equine Activities Act.

In any event, however, even under traditional assumption of the risk standards, we find the trial court erred by denying appellants' motion for a directed verdict because the evidence showed that Brandt, an experienced, highly capable horsewoman, was aware of all the dangers associated with riding Loverboy yet freely chose to ride him anyway. This constituted assumption of the risk as a matter of law. "Assumption of risk assumes that the actor, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not." (Citation and punctuation omitted.) *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 823 (4) (409 SE2d 524).

Although Brandt testified she was relying on Young's knowledge of both the horse and her own riding skills, and she contends she did not assume the risk of being thrown and kicked because she did not know Loverboy had any such propensity, her testimony established that she voluntarily assumed the risk of riding this horse with full awareness of the risks associated with so doing. She testified that she knew that the hunter-jumper tack was on and that there was no lunge line. She also testified that she was aware of no defects in the tack. She knew Loverboy was a stallion; knew stallions are unpredictable and can be hard to handle; knew he had bucked with her on prior occasions; knew horses buck, rear up, and can be spooked; knew horses can bolt and can *kick*; knew horses could be unpredictable, bothered by sudden movements, unfamiliar objects, and unfamiliar people; knew horses could throw a person in any number of ways; and knew horses could *kick or injure* in any number of ways.

Further, Brandt's testimony shows she participated in putting the tack on Loverboy that day. While Brandt may have preferred to use the dressage tack, hunter-jumper tack or dressage tack is merely a matter of the rider's preference. She rode hunter-jumper tack as a child and went to a clinic on hunter-jumper tack.

Moreover, Brandt was not an inexperienced rider. She started

riding when she was ten years old and was actively involved in the U. S. Pony Club from ages 10-18. She took riding lessons for years and worked on a farm. In the Pony Club she reached "B" rider status, the third highest ranking, and had an "HA" rating in book knowledge on horses and riding, the highest ranking. Brandt also has an Associate of Arts degree in animal husbandry.

Brandt has ridden other show horses. She rode from three to five times a week at appellants' farm where she rode several different horses, including Loverboy, and may have ridden Loverboy as many as twenty times. At the time of the accident she was teaching riding to beginners and intermediate level riders, and she returned to teaching riding after the accident.

Considering all of these factors, it cannot be said reasonably that Brandt did not assume the risks of her injuries as a matter of law. Her testimony shows that she had a full appreciation of the dangers involved in horseback riding and particularly riding a stallion, yet freely decided to ride Loverboy knowing that the tack was not to her personal preference and that there was no lunge line. Because she admitted that she knew *all* horses can buck and kick, and Loverboy had bucked with her, it is immaterial that Brandt did not know that on one prior occasion Loverboy may have bucked and kicked one of the appellants. Brandt is not allowed to say that she did not comprehend this risk which she has admitted was well known to her. This is not a case in which the horse deliberately kicked Brandt; the evidence shows that she was bucked from the horse and was kicked while the horse continued bucking.

Considering all these factors, the only conclusion that can be reached is that this is a case in which it is plain, palpable, and indisputable that Brandt assumed the risk of her injuries, as a matter of law, and the trial court erred by denying appellants' motion for a directed verdict. Accordingly, the judgment must be reversed and the case remanded to the trial court with direction to enter judgment granting appellants' motion for a directed verdict.

*Judgment reversed with direction. Andrews, C. J., Johnson, Blackburn, Smith and Ruffin, JJ., concur. McMurray, P. J., Pope, P. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

Although I concur in Division 1 of the opinion, I respectfully dissent with respect to Divisions 2 and 3. The judgment of the trial court and the underlying verdict of the jury should be affirmed.

1. The trial court was not remiss in submitting to the jury the issue of plaintiff's conduct. As in *Waits v. Makowski*, 191 Ga. App. 794, 795-796 (1) (383 SE2d 175) (1989), so here: " ' "As a general proposition, issues of negligence, contributory negligence and lack of

ordinary care for one's own safety are not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial before a jury. . . ." ' (Cits.) . . . [C]onsidering the reasonable inferences that may be drawn [from the evidence, it] presents matters which should be resolved by the jury. [Cit.]" Accord *Brandvain v. Ridgeview Institute*, 188 Ga. App. 106, 119 (4) (372 SE2d 265) (1988).

Brandt testified she consented to ride the horse "[b]ecause I trusted Tammy [Young]. I relied on her judgment. She was the expert in the situation, she was my instructor, it was her horse, she knew all about her horse and she knew all about my riding ability." Brandt contends she did not assume the risk of being thrown and kicked because she did not know Loverboy had any such propensity.

On the other hand, appellants counter that Brandt's knowledge of the risks was substantial, noting she knew Loverboy could buck because he had previously bucked while she was riding him; that she willingly agreed to exercise Loverboy, with no lunge line and hunter-jumper tack rather than dressage tack; and that she knew that horses, and stallions in particular, could behave unpredictably and might be bothered by unfamiliar surroundings.

Appellants contend this evidence required a directed verdict because it shows "[t]he knowledge among the parties here was nearly, if not precisely, equal, and a warning from defendants would have to be met with the response 'I know.' " *McNish v. Gilbert*, 184 Ga. App. 234, 236 (361 SE2d 231) (1987). But a warning from Young that Loverboy had previously kicked a thrown rider would not have met with such a response because Brandt testified she did not know this and would not have mounted Loverboy if she had known he was a kicker. When Brandt asked if she would be all right with that particular saddle and bridle, Young assured her that she would "be fine." Since Loverboy's propensity to kick was an undisclosed risk, Brandt did not have a full appreciation of the dangers involved as a matter of law.

The recent case of *Muller v. English*, 221 Ga. App. 672 (472 SE2d 448) (1996), does not support the conclusion that Brandt assumed the risk of being kicked, as a matter of law. That case was specifically decided in the context of fox hunting, "a very dangerous sport, over and above the inherent dangers of all equine activities." (Footnote omitted.) Id. at 676 (2) (c). There was evidence that being kicked by a horse is a "particular risk" of fox hunting, that kicking does occur during hunts, and that plaintiff knew that. Id. at 677-678. Here there was no such evidence about dressage or that Brandt knew kicking does occur during dressage exercises. *Muller* is inapposite.

The motion for directed verdict based upon assumption of the risk was properly denied.

2. Appellants contend a directed verdict should have been granted because any negligence on their part was not the proximate cause of Brandt's injuries, in that the incident was not foreseeable because Loverboy had no propensity to buck and kick. " '(T)o support an action for damages for injuries sustained by being bitten or kicked by a horse, it is necessary to show that the horse was vicious and that the owner had knowledge of that fact.' [Cit.]" *McNish,* supra at 235. The question is whether Brandt showed Loverboy had any propensity to act as he did. See *Banks v. Adair,* 148 Ga. App. 254 (251 SE2d 88) (1978). Young testified Loverboy had never kicked anyone. Bandaras, a former employee of Young's, testified that prior to the Brandt incident, Young returned from a horse show in Florida and stated Loverboy had thrown her and kicked her in the stomach. Brandt testified that Young told her essentially the same thing in the hospital after she was kicked.

Although the only evidence that Loverboy had previously acted similarly concerned a single act, that is sufficient to establish a propensity for an animal to engage in such conduct. *Sutton v. Sutton,* 145 Ga. App. 22, 25 (1) (243 SE2d 310) (1978); *LaHoste v. Yaarab Mounted Patrol,* 89 Ga. App. 397, 402 (79 SE2d 570) (1953). Appellants argue that the prior instance of bucking and kicking was unrelated and isolated, but "[t]he test should be whether the one incident was of such a nature as to cause a reasonably prudent person to believe the animal was sufficiently dangerous as to be likely to cause an injury at a later time. [Cit.]" *Sutton,* supra. This question is usually for the jury and was in this instance. Id. at 26. There was some evidence from which the jury could determine that Young was on notice that Loverboy had a dangerous propensity to buck and kick a thrown rider.

It was not error to deny the motion for directed verdict on the ground of proximate cause.

I am authorized to state that Presiding Judge McMurray and Presiding Judge Pope join in this dissent.

DECIDED MARCH 20, 1997 —
RECONSIDERATION DENIED APRIL 3, 1997 — ▮

*Webb, Carlock, Copeland, Semler & Stair, Dennis J. Webb, Marvin D. Dikeman,* for appellants.

*Finestone & Morris, Bruce H. Morris, Kenneth J. Clayman,* for appellee.