A97A1963. DESAI et al. v. SILVER DOLLAR CITY, INC.

(493 SE2d 540)

BIRDSONG, Presiding Judge.

Mrs. Desai appeals the grant of summary judgment to Silver Dollar City, Inc., doing business as White Water Theme Park, on her claim against White Water based upon an injury she sustained to her knee while using one of the theme park's water slides. The trial court also granted summary judgment on Mr. Desai's claim for loss of consortium.

Mrs. Desai's deposition testimony shows that she was a frequent visitor to White Water and that she and her family had season passes for at least three years, including the year she was injured. In fact, by the day of her injury, June 26, 1994, this was the fourth or fifth trip to White Water that year. Mrs. Desai testified that she was injured when, after going down the water slide at White Water in a raft as she had numerous times, she got out of the raft without being

told to by an attendant and was struck by another raft. The record also shows that Mrs. Desai had observed the water slide in operation on many occasions.

On the day Mrs. Desai was injured the following announcement was played continuously over the public address system at the beginning of the slide and on the walkway leading to the top of the slide:

"Welcome to Bahama Bob-Slide. This is a thrilling ride. When you get to the top, the lifeguard will instruct you on how to board the raft. Listen carefully to these instructions. While in the raft, sit facing the center with legs crossed and hold onto the handles. Do not lean forward as you might bump heads. Remain seated throughout the entire ride. *At the bottom of the ride do not get out of the raft until a lifeguard instructs you to do so. Other rafts will be coming down behind you and the water is shallow. Disregard for these rules may result in injury to yourself or others.*" (Emphasis supplied.)

Although Mrs. Desai's affidavit states that she did not hear this recorded message, she has not disputed that the message was being played.

Further, this sign was posted near the entrance of the slide:

## BAHAMA
## BOB-SLIDE

RATING: THRILLING
WATER DEPTH: 0-3 FEET
RESTRICTION: MAX 6 people per Aquadiscs

### HOW TO RIDE

. AQUADISCS:
. PLEASE STAY SEATED ON THE BOTTOM OF YOUR RAFT
. HOLD ON TO ONE OF THE HANDLES
. RENTAL TUBES CAN BE CARRIED TO TOP OF
 PLATFORM AND WILL BE SENT DOWN POOL
. PICK-UP AT BOTTOM OF RIDE

### CAUTION

. DO NOT EXIT RAFT UNTIL ATTENDANT INSTRUCTS
 YOU TO
. DO NOT STEP ONTO CONVEYOR
. FAILURE TO ABIDE BY THESE RULES MAY RESULT IN
 INJURY TO YOUR SELF OR OTHERS

Although Mrs. Desai admits she definitely read the sign the first time she rode in 1992 or 1993, she testified that she did not read the sign on the day of the incident even though nothing prevented her from reading it. Nevertheless, Mrs. Desai testified that two years

earlier when she read the warning sign, she knew that she should wait for an attendant to tell her to exit the raft even though she may not have remembered that on the day she was injured because she was not consciously thinking about it.

In response to a question concerning whether she knew that she should wait for the attendant before exiting the raft, Mrs. Desai testified: "See, what happened, I came out immediately from the thing. I didn't have any problem to come out. Okay. My mother was with me, who was 65 years old. I wanted to make sure she got off properly from the ride. Because it was wobbly on the water, the raft. So I was holding her raft so she can get off. And the lifeguard at that time was not present. They were doing something. And I wanted to make sure she got off. Because I was worried about her being the older person, and so she could come up safe. And I had no idea the raft from the back would come up and hit me from the back. And I was unaware of that."

Mrs. Desai testified that her mother wanted to go on a slide and Mrs. Desai selected the Bahama Bob-Slide because she had been on it herself so many times. Mrs. Desai testified that she went in one raft with her children and her mother and others from her family went in another raft. She testified that, "I came out immediately, as soon as — because of — you know, because I wanted to make sure it wasn't any problem for me to get out. Because I wanted to make sure my mother could get up properly because it was wobbling. And she was sixty-five years old. And I was worried about her, that if something happened to her, because she was visiting from India. And I wanted to make sure she didn't get hurt. Because this was the first ride in her life. So I wanted to make sure. So I was holding the tube so she could get off properly. And I had no idea the other tube came and hit me on the side. And I was not aware of it. And due to the impact, I fell down immediately into the water. At that time, the lifeguard ran to me to help me out." Mrs. Desai further testified her mother was still seated on the right side of the raft and it was her plan to stabilize the raft so that her mother could get out. Mrs. Desai also testified that on all of her previous rides on this slide she also exited the raft without the assistance of lifeguards.

Thus, Mrs. Desai's deposition establishes that she left the raft first because she wanted to make sure her mother got out safely. Mrs. Desai also testified that she could not recall whether there was any reason why she could not wait for a lifeguard to assist her from the raft or whether there was any sense of urgency on her part to get out of the raft. In response to the question that, "[i]n other words, there was nothing that would have prevented you from waiting for the lifeguard to come and help you get out of the raft," Mrs. Desai responded, "I don't remember, sir. I did not think about it." And in

response to the question that, "[t]o your recollection, there was nothing that prevented you from waiting on the lifeguards," Mrs. Desai answered, "Sorry. I don't remember anything about that. It was a routine thing. And we just did the routine things."

Mrs. Desai also testified that her children were getting out of the raft at the same time she was getting out and her mother was the last one to get out of the raft. Further, Mrs. Desai testified that, although she knew another raft would be coming down the slide, she did not expect it to be that close in time, and she never looked to see if another raft was coming.

In response to White Water's motion for summary judgment, Mrs. Desai submitted an affidavit that states that she did not hear the recorded message, and she further testified that her mother panicked and attempted to get out of the raft by herself, head first; that Mrs. Desai looked for lifeguards but they were 25 feet away doing something with rafts and the conveyor system; that she jumped out of the raft to help her mother; and that it was no longer than 15 seconds before she was hit. Additionally, Mrs. Desai's unverified complaint alleges that Mrs. Desai stepped out of the raft "to assist her mother out of the raft."

The record also shows that Mrs. Desai is a certified public accountant who works as a senior accountant for the Federal Deposit Insurance Corporation managing several departments. She graduated from college with degrees in physics and chemistry.

After White Water moved for summary judgment contending that Mrs. Desai assumed the risk of her injuries, the trial court granted summary judgment on both Mrs. and Mr. Desai's claims. This appeal followed. The Desais contend the trial court erred by granting summary judgment because genuine issues of material fact remain for trial. *Held*:

1. The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). On appeal, a grant of summary judgment will be affirmed if it is right for any reason. *Malaga Mgmt. Co. v. John Deere Co.*, 208 Ga. App. 764, 767 (431 SE2d 746). Further, when ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843). When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432); *Bishop v. Mangal Bhai Enterprises*, 194 Ga. App. 874 (1) (392 SE2d 535).

2. Because White Water's motion for summary judgment was

based on the affirmative defense of assumption of the risk, White Water had the burden of proving all the elements of that defense. Based upon the evidence set forth above, there can be no reasonable dispute but that White Water met that burden.

Both the recorded announcements and the posted sign clearly advised Mrs. Desai that she should remain in the raft until a lifeguard assisted her. For her own reasons, however, she disregarded those repeated warnings. Moreover, Mrs. Desai's deposition testimony plainly shows that there was no emergency requiring her to leave the raft before she was instructed to do so. As she testified, "it was a routine thing. And we just did the routine things."

Mrs. Desai's affidavit is of no assistance to her because her affidavit contradicts her deposition in most every significant portion and she provided *no* explanation for these blatant contradictions. On motion for summary judgment a party's self-conflicting testimony is to be construed against her unless a reasonable explanation for the contradiction is offered. *Gentile v. Miller &c., Inc.*, 257 Ga. 583 (361 SE2d 383); *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (343 SE2d 680). Because Mrs. Desai offered no explanation for the obvious contradictions between her deposition and her affidavit, the trial court was required to *eliminate* the favorable portions of her contradictory testimony, then take all testimony as it then stood and construe it in favor of the party opposing the motion in determining whether summary judgment should be granted. *Prophecy Corp. v. Charles Rossignol, Inc.*, supra at 28. Applying this rule and construing Mrs. Desai's deposition testimony in favor of White Water leaves only the evidence that she wanted to get out of the raft first to help her mother, who remained seated in the raft at the time. Also remaining is Mrs. Desai's testimony stating that her getting out of the raft was a routine thing for her and that she knew that other rafts would be coming down the slide behind her.

Additionally, assuming this Court had been permitted to credit the unexplained contradictory statements in Mrs. Desai's affidavit, those statements would not help her case. Who created this problem? Not White Water. Instead, it was created solely by Mrs. Desai's voluntary actions when both Mrs. Desai and her mother should have remained seated. The record shows clearly and palpably that this was a problem of their own creation. Further, the mother's wish to get out of the raft was not the result of any act or omission of White Water. These actions of Mrs. Desai and her mother were the proximate cause of Mrs. Desai's injury as a matter of law.

3. Considering this evidence, the only possible conclusion is that Mrs. Desai assumed the risk. "The defense of assumption of risk requires: (1) that the plaintiff had some actual knowledge of the danger, (2) that [she] understood and appreciated the risk therefrom,

and (3) that [she] voluntarily exposed [herself] to such risk. Stated another way: The doctrine of the assumption of the risk of danger applies only where the plaintiff, with a full appreciation of the danger involved and without restriction from [her] freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct so that it can be said as a matter of law [she] has assumed all risk of injury. In its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has given [her] consent to relieve the defendant of an obligation of conduct toward [her], and to take [her] chances of injury from a known risk arising from what the defendant is to do or leave undone. In by far the greater number of cases, the consent to assume the risk has not been a matter of express agreement, but has been found to be implied from the conduct of the plaintiff under the circumstances. *General Tel. Co. v. Hiers*, 179 Ga. App. 105, 106-107 (2) (345 SE2d 652)." (Citation and punctuation omitted.) *Young v. Brandt*, 225 Ga. App. 889, 891 (485 SE2d 519).

"In assessing whether a plaintiff had the requisite knowledge of the danger and appreciation of the risks, a subjective standard applies, that is, what the particular plaintiff knew, understood and appreciated. [*Vaughn v. Pleasent*, 266 Ga. 862, 864 (471 SE2d 866)]; *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 824 (409 SE2d 524) (1991). A plaintiff lacking such subjective knowledge of the danger will not be taken to have assumed the risk even though his conduct may be deemed contributory negligence for his failure under an objective knowledge standard to discover the danger by exercising the ordinary care required of a reasonable man. Id. at 824." *Sutton v. Sumner*, 224 Ga. App. 857, 859 (482 SE2d 486).

In this case, we find that the undisputed evidence shows that Mrs. Desai had actual knowledge of the danger because she was warned not to get out of the raft until instructed to do so, she knew that other rafts would be coming down the slide and she knew, because she was warned, that she might be injured if she left the raft. Although in many other instances, Mrs. Desai did not suffer the consequences of her action, in this instance the risk of injury she voluntarily assumed came to pass. In effect, even though she was warned do not do this or you might get hurt, Mrs. Desai tested the danger until she was hurt. It defies both logic and our law to permit a recovery under this evidence.

4. Further, although the dissent discusses many possible acts of negligence whether active or passive, e.g., failure to communicate between the top and bottom of the slide, lifeguards not immediately present, etc., the obvious fact remains that none of these acts would have resulted in Mrs. Desai's injury if she had remained in the raft as she was instructed. It is not the individual acts of negligence to

which one must consent, but the known risks arising from the chosen acts or omissions of the plaintiff. Mrs. Desai plainly and without dispute assumed the risk of her injury.

5. "Although assumption of the risk is ordinarily a jury question (*Taylor v. Bloodworth*, 198 Ga. App. 186, 187 (400 SE2d 691)), in plain, palpable, and indisputable cases resolution of the issue by a jury is not required. *Moore v. Service Merchandise Co.*, 200 Ga. App. 463, 464 (408 SE2d 480)." *Young v. Brandt*, supra at 891. Accord *Daves v. Shepherd Spinal Center*, 219 Ga. App. 835 (466 SE2d 692). This is such a case.

6. As Mr. Desai's cause of action is derivative of his wife's claim, the trial court also properly granted summary judgment on his claim as well. *Hall v. Garden Svcs.*, 174 Ga. App. 856, 858 (332 SE2d 3).

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed. Andrews, C. J., Pope, P. J., Johnson, Blackburn and Ruffin, JJ., concur. Eldridge, J., dissents.*

ELDRIDGE, Judge, dissenting.

I am compelled respectfully to dissent from the analysis and holding by the majority for the reasons that follow.

At the bottom of the slide, attendants were assigned to catch the raft and guide it to a safe landing place, so that it would not be struck when following rafts entered the lower pool. The attendants at the top and bottom of the slide were not in communication, either by radio, hand signals, mechanical signal, or signal light, and simply guessed at what intervals to release the next raft down the slide, because the bottom of the slide could not be seen from the top. The attendants at the top of the slide did not know that there were no attendants in place at the bottom in the landing pool, because these attendants were elsewhere, moving rafts to the conveyor belt as part of their duties. The attendants at the top of the slide released rafts at no set intervals. The rafts decelerated as they crossed the landing pool and approached the place of disembarkation.

The so-called warning signs and auditory instructions commanded the plaintiff to stay seated in her raft and not to attempt to get out without the assistance of the attendants; however, all the so-called warnings failed to inform the plaintiff of any danger or the specific danger which injured her, i.e., being struck by another raft. In fact, the warning signs warned of no specific dangers; the nonspecific warnings were, in fact, a command that the passenger was not to stand up or attempt to exit the raft or they might be injured. These so-called warnings were to control the passengers' conduct and not to protect the passengers; if the protection of passengers was, in fact, the true purpose of the signs and intent of the defendant, then the attendants would have been in place to receive them safely at the

bottom of the slide instead of doing a less important job of returning rafts. By commanding the passengers to remain docilely in the rafts like a herd of animals, fewer attendants were necessary, because the attendants could go place the rafts on the conveyor belt for return, while the passengers sat obediently, waiting for the attendants to return to the rafts. This was crowd control!

Mrs. Desai and her family rode the Bahama Bob-Slide, but when their raft reached the bottom of the slide (flume), there were no attendants to catch the raft and guide it to safety. The raft glided across the landing pool and came to a stop. Plaintiff's mother, who was elderly, started to get out, but had difficulty attempting to exit the raft without the assistance of the attendants. Plaintiff's mother seemed to panic and wanted to get out of the raft immediately without waiting for the attendants. Plaintiff got out of the raft to prevent her mother from falling out of the raft and to steady the raft so that her mother could get out without falling.

The next raft, launched without warning, came down the slide, crossed the length of the landing pool, and struck plaintiff, who was at the rear side of the raft, injuring her. Plaintiff was unaware that the next raft had been launched without warning or would arrive after such a short interval to place her in danger of being struck if she was in the water. The collision of the second raft with the plaintiff occurred at the end of the landing pool where patrons were to disembark. At the time plaintiff was struck by the second raft, she was standing near the left rear portion of the raft in the pool with her hands on the raft, facing her mother, who had been seated on the right side of the raft. Plaintiff was struck within 15 to 30 seconds after she got into the pool.

The attendants, who had been at the bottom of the slide prior to the launch of plaintiff's raft, were then busy elsewhere, sending rafts up the conveyor belt some 25 feet away when plaintiff's raft came to a stop. Although the attendants were only twenty-five feet and approximately ten seconds away, they were not at the point of disembarkation when plaintiff's raft stopped; did not warn plaintiff or her mother to stay seated and to remain in the raft until they could provide assistance; and did not warn plaintiff to look out for the approaching second raft after she got into the pool. They were too busy clearing other rafts from the pool, to help, look, or warn. If they had bothered to look, the attendants were close enough to see what was happening and to warn her before she was struck. After the plaintiff was struck, it took the attendants only ten seconds to reach her.

(a) The first issue that should have been addressed by the majority was whether or not, under OCGA § 9-11-56 (e), the burden of production of evidence shifted to the plaintiff/non-moving party to show

negligent acts or omissions of the defendant/moving party and whether evidence existed that negates the possibility of plaintiff showing negligence on the part of the defendant owner/occupier and its employees. *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991); *Greenforest Baptist Church v. Shropshire,* 221 Ga. App. 465 (471 SE2d 547) (1996); *Crosson v. Lancaster,* 207 Ga. App. 404 (427 SE2d 864) (1993). The defendant failed to show that it was free from negligence.

In this case, there were two kinds of negligence asserted against the owner: (1) passive negligence or a static condition, i.e., the inability of the attendants to see from the top of the flume to the landing pool, the inadequacy of the visual or auditory warnings, and the lack of communications between the employees in each of these areas; and (2) active negligence by the employees, i.e., sending the rafts down the flume at unsafe intervals; failure to be at the landing to assist, instead of putting rafts on the conveyor belt; failure of the attendant to warn the plaintiff and her mother to remain seated after they reached the landing pool and to remain in the raft when plaintiff started to get out; and failure to warn of the approach of the second raft after plaintiff got out of the first raft and placed herself in a position of peril without realizing the imminent danger to herself. *Lipham v. Federated Dept. Stores,* 263 Ga. 865, 866 (440 SE2d 193) (1994). The majority fails to distinguish between these two distinct kinds of negligence and insists that the acts of the employees were not active negligence.

The presence of the warning sign and the audio warning demonstrated fact questions as to whether there was a breach of the duty to *warn adequately and specifically of known dangers* by the owner/occupier of the existence of active, as well as passive, dangers and as to the adequacy of the warning. The giving of the warnings *acknowledged the existence of dangers and risks,* but failed to identify the dangers, so that patrons could exercise ordinary care for their own safety to avoid such identified dangers. The "warnings" were diluted into commands to do a specific thing to avoid any and all possible risks without revealing specifically those risks, as if given to young children, the usual patrons who were accustomed to obeying directions blindly. For all a reasonably prudent adult could perceive from the warnings given, such instructions were mere crowd control directions that were given to help management and not to protect the patrons. The content of the message totally failed to bring home to the receiver the appreciation that there were any specific dangers to guard against. The obvious reason for the inadequacy of warning was to dilute the message of danger and to cause a sense of well-being, instead of alarm and alertness to danger, in this place of family fun. Management did not want to scare patrons away from returning to

this potentially dangerous place; adequate warnings would be very bad for business. Patrons who are frightened for their and their children's safety do not return.

The act of sending the second raft down blindly and too close in time to the first raft and not having attendants at the landing pool to assist in the disembarkation raised factual questions as to the employees' active negligence. The acts of the attendants in loading the rafts onto the conveyor belt, instead of watching plaintiff's raft and warning her either to sit down and stay in the raft, or to look out for the second raft when it was about to hit her, raised issues of active negligence. See *Lipham v. Federated Dept. Stores*, supra. Plaintiff's evidence created material issues of fact as to whether or not White Water and its employees were negligent.

(b) The second issue to be decided was whether or not the defendant made out a prima facie affirmative defense by proving through competent evidence each and every element of such affirmative defense, for which it had the burden of proof both at trial and on summary judgment. *Barentine v. Kroger Co.*, 264 Ga. 224, 225 (443 SE2d 485) (1994); *Lau's Corp. v. Haskins*, supra; *Hornbuckle Wholesale Florist of Macon v. Castellaw*, 223 Ga. App. 198 (477 SE2d 348) (1996) (McMurray, P. J., dissenting); *J. H. Harvey Co. v. Edwards*, 219 Ga. App. 697, 698 (466 SE2d 246) (1995); *Sheriff's Best Buy v. Davis*, 215 Ga. App. 290, 291 (450 SE2d 319) (1994). This the defendant also failed to do.

White Water raised two affirmative defenses: (1) contributory negligence by the plaintiff; and (2) assumption of the risk by the plaintiff. If White Water made out each of the elements of either defense or both and plaintiff failed to produce evidence to raise a material issue of fact as to either affirmative defenses, then the defendant was entitled to summary judgment as a matter of law.

(1) White Water had the burden of proof both at trial and on motion for summary judgment as to the affirmative defense of contributory negligence by the plaintiff in failing to exercise ordinary care for her own safety. *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 691 (458 SE2d 876) (1995); *Stewart v. Mynatt*, 135 Ga. 637 (70 SE 325) (1911); *City Council of Augusta v. Hudson*, 88 Ga. 599 (15 SE 678) (1891); *Nelson & Budd, Inc. v. Brunson*, 173 Ga. App. 856, 857 (3) (328 SE2d 746) (1985).

Contributory negligence is comprised of two separate and distinct defenses. See *Savannah Elec. Co. v. Jackson*, 132 Ga. 559, 562 (2) (64 SE 680) (1909); *Savannah, Fla. &c. Co. v. Stewart*, 71 Ga. 427, 428 (2) (1884); *Whatley v. Henry*, 65 Ga. App. 668, 673-674 (6) (16 SE2d 214) (1941). "[F]irst the plaintiff must at all times use ordinary care for [her] own safety; that is, [she] must not by [her] own negligence (or consent) proximately cause [her] own injuries; and second,

the plaintiff must use ordinary care to avoid the consequences of the defendant's negligence when it is apparent or when in the exercise of ordinary care it should become apparent. . . . Comparative negligence is applicable only when the jury has not found either the negligence of the plaintiff or that of the defendant to be the sole proximate cause. [Cits.]" *Whatley v. Henry,* supra at 674; see also *Edwards v. Trammell,* 187 Ga. App. 22, 24 (369 SE2d 288) (1988); *Leonardson v. Ga. Power Co.,* 210 Ga. App. 574, 576 (436 SE2d 690) (1993).

Absent the negligence of White Water's attendant launching the second raft too soon, without knowing the status of the occupants of the first raft or of the location of the lower attendants, plaintiff would not have been injured; plaintiff's conduct was not the sole proximate cause of her injury but only concurred in the proximate cause with the negligence of the defendant. Therefore, the plaintiff was, at most, comparatively negligent.

"Comparative negligence by the plaintiff is that negligence which joins with the negligence of the defendant in proximately causing the injuries of the plaintiff and goes in reduction of the amount of recovery in proportion that the negligence of the plaintiff compares with that of the defendant, resulting, by reduction, in a bar of recovery when the negligence of the plaintiff is equal to or greater than that of the defendant." *Whatley v. Henry,* supra at 674.

While plaintiff could see that the attendants were busy loading rafts 25 feet away and were not available to immediately help her get her mother out of the raft, the raft was unsteady as her mother attempted to stand. The only apparent danger appeared to her to be that either the raft would turn over with her mother standing up or that her mother would fall over the side of the raft. Plaintiff's mother's conduct immediately created a dangerous situation, which plaintiff could resolve in either of two ways: (1) her mother could sit back down and remain seated; however, the mother seemed to panic and could not be reasoned with, which reduced the feasibility of this alternative and her mother was an adult with a mind of her own; or (2) plaintiff could climb out and steady the tossing raft to prevent her mother's fall, which she did. The negligence of the attendant on top of the flume in launching the second raft too soon and without warning was not immediately apparent to plaintiff, although she may have reasonably anticipated such conduct. However, no one has a duty to anticipate the active negligence of another. *Poppell v. Smutney,* 106 Ga. App. 480 (127 SE2d 335) (1962); *Beadles v. Bowen,* 106 Ga. App. 34 (126 SE2d 254) (1962); *Economy Gas &c. Co. v. Kinslow,* 74 Ga. App. 418 (39 SE2d 899) (1946).

A plaintiff has no duty to avoid the active negligence of another until such negligence has, in fact, occurred and is known by the plaintiff or, by the plaintiff's exercise of ordinary care and diligence,

should have been apparent to her; thus, until the second raft was launched and she saw it or should have seen it, she had no duty to anticipate or avoid the second raft. *Newman v. Collins*, 186 Ga. App. 595, 596 (1) (367 SE2d 866) (1988); *Seaboard Coast Line R. Co. v. Clark*, 122 Ga. App. 237, 240 (5) (176 SE2d 596) (1970).

In this case, while plaintiff may have known that other rafts were launched within short intervals, such general knowledge was not knowledge that, on this specific occasion, the other raft would be launched less than 30 seconds after the first raft, that no warning of the launch would be given, that the raft would cross the landing pool and collide with the other raft or her, or that the raft would have such force as to cause her injuries. Plaintiff's negligence, if any, was not the *sole* proximate cause of her injury, but goes instead to the defense of comparative negligence, which is a jury question under the facts and circumstances of this case.

Further, the audio and visual "warnings" did not warn of any specific danger, but gave only commands and instruction as to the general conduct of patrons which could lead to injury, without revealing the potential dangers of such conduct. Thus, the warnings failed to adequately provide a notice of any actual or potential dangers; the warnings merely commanded certain conduct without identifying the dangers, which does not constitute a proper and adequate warning.

(2) Assumption of the risk occurs "[w]hen a person knowingly and voluntarily takes a risk of physical injury, the danger of which is so obvious that the taking of such a risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for [her] own safety, [she] cannot hold another liable for injuries proximately caused by such action even though the injuries may be in part attributable to the negligence of such other person." *Deere & Co. v. Brooks*, 250 Ga. 517, 518-519 (1), (2) (299 SE2d 704) (1983); *Newman v. Collins*, supra at 596; see also *City of Winder v. Girone*, 265 Ga. 723, 724 (2) (462 SE2d 704) (1995); *Union Camp Corp. v. Helmy*, 258 Ga. 263, 267 (367 SE2d 796) (1988); *Southland Butane Gas Co. v. Blackwell*, 211 Ga. 665, 669-670 (88 SE2d 6) (1955); see also *Fountain v. Thompson*, 252 Ga. 256, 257 (312 SE2d 788) (1984).

"Testing a known peril acts as a transition between the concepts of avoidance and assumption of the risk. 'One who recklessly tests an observed and clearly obvious peril is guilty of lack of ordinary care,' *Brooks v. Douglas*, 154 Ga. App. 54, 58 (2) (267 SE2d 495) (1980) (two judges only), and is guilty of such negligence 'which will be deemed the proximate cause of [the] resulting injury, and, in the absence of wilful or wanton misconduct by the defendant, will preclude recovery.' *Laseter v. Clark*, 54 Ga. App. 669, 670 (1) (189 SE 265) (1936)." *Newman v. Collins*, supra at 596.

"*Taylor v. Morgan*, 54 Ga. App. 426 (188 SE 44) (1936), and other cases, appear to blend or merge the two concepts of avoidance and assumption of the risk when they are separate and distinct. Assumption of risk in its simplest and primary sense means that the plaintiff has given [her] express consent to relieve the defendant of an obligation of conduct toward [her] and to take [her] chance of injury from a known risk. *Owens-Ill. v. Bryson*, 138 Ga. App. 78, 79 (225 SE2d 475) (1976). Also, plaintiff with knowledge of the risk may be regarded as tacitly or impliedly agreeing to take [her] own chances. Id. at p. 79. In working out the distinction, the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it. *Roberts v. King*, [102 Ga. App. 518, 521 (1) (116 SE2d 885) (1960)]. The doctrine of avoidable consequences does not rest upon the idea that defendant is relieved of any duty toward plaintiff, but denies recovery for any damages which could have been discovered by plaintiff or might have been avoided by reasonable conduct on plaintiff's part. *Osborn v. Pilgrim*, 246 Ga. 688, 695 (273 SE2d 118) (1980). Avoidance of the consequences involves the failure to take action to overcome defendant's negligence after it is discovered by plaintiff's exercise of ordinary care. *Lanier v. Turner*, 73 Ga. App. 749, 753 (38 SE 55) (1946). The rule which requires one to avoid the consequences of another's negligence does not apply until [she] sees the danger or has reason to apprehend it. *Central R. &c. Co. v. Attaway*, 90 Ga. 656, 661 (16 SE 956) (1892). See *Griffin v. Campbell*, 112 Ga. App. 420 (2) (145 SE2d 659) (1965); *Smith v. 670 New Street*, 111 Ga. App. 35, 38 (140 SE2d 495) (1965); *Economy Gas &c. Co. v. Kinslow*, [supra at 420]." (Punctuation omitted.) *Newman v. Collins*, supra at 596-597.

For the affirmative defense of assumption of the risk to be applicable to this case, there must be evidence that *"the plaintiff had actual knowledge of the dangerous situation that resulted in [her] injury, and an appreciation of the risks associated with that dangerous situation."* (Emphasis supplied.) *Vaughn v. Pleasent*, 266 Ga. 862, 863 (471 SE2d 866) (1996). "The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that [she] without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not. In Georgia, a defendant asserting an assumption of the risk defense *must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed [herself] to those risks.* Knowledge of the risk is the watchword of assumption of risk, and means both *actual* and *subjective* knowledge on the plaintiff's part. *The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the*

*specific, particular risk of harm associated with the activity or condition that proximately causes injury. The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities."* (Citations, footnotes, and punctuation omitted; emphasis supplied.) Id. at 864; see also *Smith v. Mangram,* 222 Ga. App. 585, 586 (474 SE2d 758) (1996); *York v. Winn-Dixie Atlanta,* 217 Ga. App. 839 (459 SE2d 470) (1995); *Turner v. Sumter Self Storage Co.,* 215 Ga. App. 92, 94-95 (3) (449 SE2d 618) (1994). Thus, the Supreme Court has returned tort law to again requiring subjective knowledge and appreciation of the danger before the affirmative defense of assumption of the risk bars recovery; subjective knowledge and appreciation of the specific danger has not been shown in support of this motion for summary judgment and remains a question of fact for the jury. The majority chooses to ignore this requirement in order to affirm by reference to general awareness of danger, which the Supreme Court held was not adequate to prove assumption of the risk as a bar.

While warnings of a kind existed in this case, the warnings were general in nature and not specific as to what dangers existed. The warning was that passengers should not attempt to get out of the raft; the warnings did not specify as the danger that the passenger could be struck by another raft; such warning could have caused a reasonable person to believe that the danger was tipping the raft or falling down or out of the raft, not being struck by another raft. For assumption of the risk to bar recovery, the plaintiff must be aware of the specific danger and choose to risk such specific danger. *Seibers v. Dixie Speedway,* 220 Ga. App. 811, 813 (3) (470 SE2d 452) (1996); *Turner v. Sumter Self Storage Co.,* supra at 94.

In this case, the plaintiff asserted that she believed that the danger was in tipping the raft or falling, and that to protect her elderly mother, she got out of the raft to steady it.

"As a general rule, whether a party assumed the risk of [her] injury is an issue for the jury that should not be decided by summary judgment unless the defense is conclusively established by plain, palpable and undisputed evidence. *Taft v. Taft,* 209 Ga. App. 499, 500 (433 SE2d 667) [(1993)]." *Turner v. Sumter Self Storage Co.,* supra at 94. The defendant in this case failed to make out a prima facie affirmative defense of assumption of the risk, because subjective knowledge of the specific danger and appreciation of such danger has not been shown. This was not a plain, palpable and undisputed evidence case, although the majority seeks to make it appear as such.

(3) Plaintiff was confronted by what she perceived was a sudden emergency; her mother had attempted to get out of the raft, experienced problems, and seemed to panic. Therefore, a jury issue arose as to whether the facts and circumstances actually presented a

sudden emergency and, if so, did she exercise ordinary care under the facts and circumstances of getting out to steady the raft, instead of making her mother sit down and wait for the attendants. The elderly mother created the situation; plaintiff merely reacted to her mother. In an emergency, one is not held to the same accuracy of judgment that would be required when there is more time for deliberation. *Bass v. Seaboard Air Line R. Co.*, 205 Ga. 458 (53 SE2d 895) (1949); see also *Artlip v. Queler*, 220 Ga. App. 775 (470 SE2d 260) (1996); *Johnston v. Woody*, 148 Ga. App. 152 (250 SE2d 873) (1978); *Gordon v. Gordon*, 133 Ga. App. 520 (211 SE2d 374) (1974). If plaintiff was, in fact, negligent and presented with a sudden emergency, then it was for a jury to determine whether or not plaintiff's negligence was the sole proximate cause of her injury, was equal to or greater than the negligence of the defendant, or was less than the negligence of the defendant. The jury would have to decide if this was an assumption of the risk which would negate the exception of sudden emergency or if it was ordinary negligence on the part of the plaintiff so that sudden emergency and comparative negligence would be applicable.

Sudden emergency only applies to those acts immediately following a realization of peril or crisis and before there is time for mature reflection as to the safest course of conduct, thus it cannot apply when there was an assumption of the risk. *Brock v. Avery Co.*, 99 Ga. App. 881 (110 SE2d 122) (1958); *Stripling v. Calhoun*, 98 Ga. App. 354 (105 SE2d 923) (1959); see also *MARTA v. Mehretab*, 224 Ga. App. 263, 264 (1) (480 SE2d 310) (1997); *Thomas v. Stairs*, 215 Ga. App. 288 (450 SE2d 326) (1994). Plaintiff may be held to realize the peril of standing up and getting out of the raft in falling or tipping over the raft; however, she was never aware of the peril from the hurtling raft after she successfully exited her own raft.

Whether or not plaintiff's elderly mother's conduct constituted a crisis or emergency is for the jury to decide, along with the affirmative defenses of contributory negligence, assumption of the risk, and comparative negligence. The majority has taken the above issues from the determination of the jury and decided this case as a matter of law. While this case would probably be decided by a jury adversely to the plaintiff, under OCGA § 9-11-56, plaintiff has the absolute right to have the jury, and not the trial court, decide this case under these facts and circumstances. *Lau's Corp. v. Haskins*, supra; *Greenforest Baptist Church v. Shropshire*, supra; *Crosson v. Lancaster*, supra.

DECIDED OCTOBER 15, 1997 —
RECONSIDERATION DENIED NOVEMBER 5, 1997 — 

*Rubin & Wildau, Martin H. Rubin, David Markus,* for appellants.

*Webb, Carlock, Copeland, Semler & Stair, Brian R. Neary,* for appellee.